STATE OF CONNECTICUT *v.* RAYMOND R. PARENT
(4376)

BORDEN, DALY and BIELUCH, Js.

Argued June 10—decision released August 12, 1986

*John M. Andreini,* with whom, on the brief, was *Joseph E. Fazzano,* for the appellant (defendant).

*Robert J. Enright,* special assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan,* state's attorney, and *Brian Cotter,* assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, after a jury trial, of possession of narcotics with intent to sell in violation of General Statutes § 21a-278 (b). He claims that the trial court erred (1) by improper restriction of his right to voir dire prospective jurors, (2) by denying his motions for judgment of acquittal based on insufficiency of the evidence to support his conviction, (3) by admitting the testimony of a witness relating to the defendant's knowledge of the nature of the substance involved, and (4) in the court's charge to the jury on the issue of possession. We find no error.

The jury could reasonably have found the following facts: The defendant was employed at the Georgia-Pacific facility in Newtown. In early April, 1984, Maureen Keenan, a delivery supervisor for United Parcel Service (UPS), in Brookfield, supervised the delivery of an overnight package sent from Miami, Florida, and addressed to the defendant at the Georgia-Pacific facility. Keenan described the package as approximately six to eight inches square. She noticed that the package was sent COD but had no COD charge indicated on the outside of the package. She therefore did

not know how much to collect on delivery. Because it was an overnight package which she wanted to deliver promptly, Keenan, in accordance with company policy, opened the package to look for a packing slip. There was no such slip. In delivering the package to the defendant at Georgia-Pacific, she opened the package over the protest of the defendant, who did not want her to do so and whom she described as having an excited demeanor. In the package were protective packaging material and a sealed plastic baggie, one to two inches by four inches in size, containing a white powdery substance. She gave the baggie to the defendant, who called Miami to find out the shipping charge.

Later in the same month, Keenan made a second delivery of a similar package to the defendant at Georgia-Pacific. This package was similar to the first in size, was an overnight COD package and had been sent from the same person and address in Miami.

Still later in the same month, a similar third package arrived at UPS for delivery to the defendant. It was from the same address in Miami. When Keenan saw the package, she called David Olson, a UPS security officer. Olson opened the package. It contained a Tupperware plastic container in which, in turn, was a clear plastic bag. The bag contained a white powdery substance later determined to constitute 27.8 grams, or .98 ounces, of cocaine.

After meeting with the police, Olson, accompanied by two members of the Newtown police department, went to Georgia-Pacific to deliver the package to the defendant. Olson arrived at the Georgia-Pacific front desk and told the person there that he had a package for the defendant. The defendant came to the desk, and Olson identified himself as a UPS employee with a COD package from Miami. The defendant gave Olson the ten dollars COD charge, signed the UPS delivery record,

and Olson handed the package to the defendant, who took it into his hands. The police officers then arrested the defendant.

The amount of cocaine involved, 27.8 grams, could yield, at a minimum, 278 individual one hundred milligram dosages. By dividing the 27.8 grams into smaller dosages or by adding dilutants, the number of individual dosages could be increased. A fifty milligram dosage would yield a very strong physiological response, and a one hundred milligram dosage would be even more potent and could be fatal to the user.

## I

The defendant's first claim, namely, that the trial court improperly restricted his right to voir dire prospective jurors, requires little discussion. The defendant has made no more than a "minimal pass at complying with" the requirements of proper presentation of such a claim pursuant to Practice Book § 3060F (d) (3). See *Enterprise Leasing Corporation* v. *Dixon,* 1 Conn. App. 496, 501, 472 A.2d 1300 (1984). General assertions in his brief regarding the subject matters which he wished to explore, coupled with three transcript references, are insufficient. Id. We, therefore, decline to review this claim.

## II

The defendant next claims that the evidence was insufficient to sustain his conviction in two respects: (1) that there was insufficient evidence of his knowledge of the narcotic character of the content of the package; and (2) that there was insufficient evidence of his intent to sell the cocaine. We disagree.

The two-fold test for determining the sufficiency of the evidence to justify a conviction is well established. We first view all of the evidence in the light most favorable to the verdict. We then determine whether a jury

could have reasonably concluded, from that evidence and all the reasonable inferences which it yields, that the defendant was guilty beyond a reasonable doubt. *State* v. *DiStefano,* 7 Conn. App. 726, 731, 510 A.2d 995 (1986).

We agree with the defendant that in order to establish illegal possession of narcotics the state must prove, not only that the defendant "exercised dominion and control over the substance, [but that he] had knowledge of its presence, and had knowledge of its narcotic character." *State* v. *Williams,* 169 Conn. 322, 335, 363 A.2d 114 (1975). We also agree that mere acceptance of a package containing narcotics is an insufficient basis for an inference of knowledge of its contents; otherwise "the recipient of the package would be liable to conviction, not because of the criminality of his own behavior but because of the wholly unilateral act of the sender." *State* v. *Richards,* 155 N.J. Super. 106, 114, 382 A.2d 407 (1978); see *Illinois* v. *Andreas,* 463 U.S. 765, 769 n.3, 103 S. Ct. 3319, 77 L. Ed. 2d 1003 (1983). The state's case here, however, did not depend solely upon the defendant's acceptance of the package containing the contraband.

This was not an unexpected package sent to the defendant. The jury was not powerless to infer the defendant's knowledge of its contents. This was the third similar small package from the same source and address in Miami within less than one month. This package contained a small plastic bag which, in turn, contained a white powdery substance determined to be cocaine. In the first package was a small plastic bag containing a white powdery substance. When that package was delivered, the defendant did not want Keenan to open it, and exhibited an excited demeanor when she did so. It is by now common knowledge that cocaine is often packaged as a white powder in small plastic bags. While it was not a necessary inference that the

first two recent similar packages sent to the defendant also contained cocaine, that was a permissible inference for the jury to draw. See *State* v. *Dumlao,* 3 Conn. App. 607, 616, 491 A.2d 404 (1985) ("in viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence"). Thus, the jury could also infer that the defendant knew that this similar third package, having been sent to him from the same source within such a brief period of time, also contained cocaine.

There was also sufficient evidence of the defendant's intent to sell the cocaine. The concept of a sale of an illicit drug is not confined to an exchange for value, but "is any form of delivery which includes barter, exchange or gift, or offer therefor . . . ." General Statutes § 21a-240 (50).[1]

Intent may be inferred from conduct. *State* v. *Avila,* 166 Conn. 569, 579, 353 A.2d 776 (1974). "Possession of large quantities of prohibited narcotics will support a conclusion that it was possessed for distribution or for sale." Id. Here, there was evidence that the amount of cocaine which the defendant possessed could yield at least 278 highly potent, even fatal, dosages, and an even greater number of smaller or diluted dosages. There was also evidence that this was the third similar delivery to him within less than one month. "The illegal sale of drugs is a criminal activity which is not necessarily confined to a [particular] period, as if it were inherently akin to the traditional Thanksgiving-to-Christmas retail sales period. It often . . . involves

---

[1] Indeed, after the court's original charge, the jury specifically asked the court whether a sale included "any form of distribution to one or more persons . . . such as presenting a gift?" The court responded appropriately, and reminded the jury that the defendant was not charged with making a sale, but with possession with intent to sell.

a course of conduct which continues over a long period of time." *State* v. *Ralston,* 7 Conn. App. 660, 682, 510 A.2d 1346 (1986). Although it would have been a permissible inference that the defendant was simply a heavy personal user, it was also a permissible inference that he intended to deliver some or all of the cocaine to others. *State* v. *Dumlao,* supra. The jury could reasonably infer that the defendant intended to "sell" the cocaine, within the meaning of that term as defined in General Statutes § 21a-240 (50), and that this third shipment was part of the process of building up or replenishing his inventory.

### III

The defendant's third claim of error involves the admission of Keenan's testimony regarding the delivery of the first two packages and the contents of the first package. Although the defendant concedes the relevance of Keenan's testimony, he claims that its prejudicial effect outweighed its probative value. His argument is without merit.

Keenan's testimony was highly relevant to the defendant's knowledge and intent. See *State* v. *Murrell,* 7 Conn. App. 75, 80, 507 A.2d 1033 (1986). The defendant has not shown that the court abused its broad discretion in performing its classic function of weighing probative value against prejudicial effect. Id., 81.

### IV

This leaves for consideration the defendant's final claim, namely, that the trial court, in its charge to the jury on the concept of possession, took from it the option of finding that the defendant did not have dominion and control of the package. We disagree.

In performing its required function of relating the law of the case to the evidence; see *State* v. *Storlazzi,* 191 Conn. 453, 467, 464 A.2d 829 (1983); the court

charged on the issue of possession as follows: "If you find the State has not proven beyond a reasonable doubt that Mr. Olson of UPS left the box either on the counter, between himself and [the defendant] or in [the defendant's] hand, then you must find that the defendant is not guilty. However, if you find beyond a reasonable doubt that the defendant received the package from Mr. Olson after paying the COD charges, [that the defendant] signed the UPS receipt indicating delivery of the package and that Mr. Olson had left the box either on the counter or in the defendant's hand, then you *must* find delivery was made of the box addressed to the defendant which placed the defendant in the possession and control of the box." (Emphasis added.) The defendant excepted to the court's use of the word "must" as emphasized above.

This case comes within the familiar principle that jury instructions need not be perfect, as long as they are legally correct, adapted to the issues and sufficient for the jury's guidance. *State* v. *Storlazzi,* supra, 464. The ultimate test is whether the charge in its entirety fairly presents the case to the jury. Id., 466. The charge should relate the law to the evidence sufficiently to give the jury a practical guide. Id., 467.

Possession requires dominion and control. *State* v. *Williams,* supra. The state's claim is that when the defendant paid the COD charges for the package and signed the UPS receipt for it, and when Olson either placed it in the defendant's hand or left it on the counter, the defendant was in possession of it because he had dominion and control over it. That is a perfectly valid legal claim, because at that point UPS had done all it could do to effect delivery of the package to the defendant, the defendant had done all he was required to do to accept delivery, and the package was for all legal and practical purposes in his possession. The signed receipt acknowledged delivery. All that remained to

perfect delivery of the box was for Olson to release it into the defendant's hands or within his reach or accessibility. We fail to see how, under this view of the state's evidence, the defendant could not be found to have been in possession of the box.

The court did not, as the defendant claims, remove from the jury's consideration the option of finding that the defendant did not have possession of the box. It instructed the jury that if it had a reasonable doubt about whether the defendant took possession of the box as claimed by the state, it must find the defendant not guilty. The court did, however, relate the law of possession to the evidence. Although the use of the word "must" may have been, as the state suggests, infelicitous,[2] we cannot conclude that it was erroneous.

In *State* v. *Storlazzi,* supra, our Supreme Court approved a similar jury instruction in which the trial court related the law to the evidence. In that case, the defendant was charged with risk of injury to a minor child. General Statutes § 53-21. An essential element of that offense was the doing of "any act likely to impair the health or morals of any child." *State* v. *Storlazzi,* supra, 464–65 n.9. After referring to the state's evidence, the trial court charged the jury that "[t]his is the type of activity that Connecticut General Statutes [§] 53-21 seeks to protect children from. And, that is the type of activity which is likely, if it did take place, to impair the health or morals of a child." Id., 467. The trial court also instructed the jury that it *"must* find the defendant guilty of . . . risk of injury to, or impairing the morals of a child," if the jury found certain facts based on the evidence which the court reviewed at length in its charge. (Emphasis added.) Id.

---

[2] Perhaps a more neutral phrasing would have been "may," or "such findings would be sufficient to establish that the defendant had dominion and control of the box."

478

The Supreme Court concluded that "[t]he instructions, read in their entirety, did not direct or advise the jury how to decide the matter, and fairly presented the case to the jury in such a way that no injustice was done to the defendant. Indeed, the instructions comported with the requirement that an allusion to the evidence is necessary to furnish the jury with a practical guide as to how to apply the law to the evidence." Id., 467. Likewise, the trial court in the present case did not err merely by furnishing the jury with such a practical guide.

Furthermore, the court instructed the jury that it was solely their duty to find the facts, that its comments on "the propriety or lack of propriety of your finding certain facts from the evidence . . . are merely suggestions for you to approve or disapprove in the exercise of your own sound judgment," and that its references to the facts were only for the purpose of relating the law to the evidence. "The instructions, read in their entirety, did not direct or advise the jury how to decide the matter, and fairly presented the case to the jury in such a way that no injustice was done to the defendant." Id.

There is no error.

In this opinion the other judges concurred.