STATE OF CONNECTICUT *v.* PHILIP LISCIO
(3479)

DUPONT, C. J., BORDEN and DALY, Js.

Argued September 15—decision released November 11, 1986

*Joan M. Alexander,* certified legal intern, with whom were *Todd D. Fernow* and, on the brief, *Lesley D. Torsiello* and *Deborah R. Witkin,* certified legal interns, for the appellant (defendant).

*Julia DiCocco Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, *Thomas V. O'Keefe,* assistant state's attorney, and *Philip Scarpellino,* certified legal intern, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, after a jury trial, of burglary in the third degree, in violation of General Statutes § 53a-103 (a),[1] and larceny in the first degree in violation of General Statutes § 53a-122 (a) (2).[2] The defendant claims that the trial court erred in denying his motion for judgment of acquittal of each count on the ground of evidentiary insufficiency. We find no error.

The first count of the information, charging the defendant with burglary in the third degree, alleged that between 9 a.m. and 9:30 p.m. on February 21, 1983, the defendant unlawfully entered premises at 139 Watch Hill Road, in Branford, with intent to commit a crime therein. The second count, charging the defendant with larceny in the first degree, alleged that at the same time and place the defendant, with the intent to deprive another of property or to appropriate it to him-

---

[1] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

[2] General Statutes § 53a-122 (a) (2) provides: "A person is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and . . . (2) the value of the property . . . exceeds ten thousand dollars." General Statutes § 53a-119 defines larceny in pertinent part: "A person commits larceny when, with intent to deprive another of property . . . he wrongfully takes . . . such property from an owner."

self, wrongfully took such property from the owner, and that the value of the property exceeded ten thousand dollars.

The jury could reasonably have found the following facts: On February 21, 1983, Nancy and Henry Levine resided at 139 Watch Hill Road. Robin Dorman, who is Nancy Levine's daughter and Henry Levine's stepdaughter, lived with the defendant in West Haven. Only the Levines and Dorman lawfully possessed keys to the Levines' residence. Dorman had known the defendant for approximately two years, and had been living with him for about two months. Dorman had, at some time prior to February 21, 1983, lost her set of keys, including her key to the Levines' residence. The defendant had been in the Levines' residence two or three times.

On February 21, 1983, Henry Levine was in London on a business trip. At 9:30 a.m., Nancy Levine left her residence to go to work at a bridal shop which she and her husband owned. She turned the lights off and locked the front door behind her. Dorman also worked at the bridal shop. During the day the defendant telephoned Dorman several times at the shop, which was not unusual. During one of the telephone calls he asked to speak with Nancy Levine, which was unusual, and arranged to meet her for lunch the next day.

Nancy Levine closed the shop at 9 p.m. and arrived home at approximately 9:30 p.m. The front door was locked. She unlocked it and, upon entering the premises, saw a light on upstairs. She went upstairs and saw that her husband's armoire was open. Additionally, the top drawers of her dressers and her jewelry chest drawers were open. These were all closed when she had left that morning. She saw that expensive jewelry was missing. She called the police.

No evidence was offered regarding any points of possible entry to the residence other than the front door.

The Levines' residence was part of a condominium complex consisting of three streets and approximately seventy-five units. During calendar year 1983, this was the only burglary and theft at the complex reported to the Branford police department.

Ultimately, the Levines prepared a list of the jewelry which Nancy Levine discovered missing that evening. The list included an antique key wind watch which her husband had given her as an anniversary gift, and a gold watch with a Lenox band belonging to Henry Levine.

Mark DiMiero owned a jewelry store in Orange, and knew the defendant. At some time shortly after the burglary, the defendant came to DiMiero's store. Dorman was with him. Privately, out of Dorman's hearing, the defendant told DiMiero that he would like to see DiMiero the next day. On the next morning, the defendant brought Nancy Levine's key wind watch to DiMiero for possible appraisal and sale. DiMiero took the watch, put it in his safe, and it was ultimately turned over to the police and introduced into evidence. On March 9, 1983, the defendant returned to DiMiero's store, and sold DiMiero some jewelry. Among that jewelry was Henry Levine's gold watch with a Lenox band. The discovery that DiMiero had the Levines' watches was made by Henry Levine on a visit to DiMiero's store shortly after the burglary.

All the jewelry which was stolen from the Levine residence on February 21, 1983, had a fair market value of $25,000. The key wind watch was valued separately at $400, and the Lenox watch band at $700.

I

The defendant first claims that the evidence was insufficient to form the basis of a conviction for burglary in the third degree. The defendant concedes that

the state established the fact of a burglary on February 21, 1983. He claims, however, that the state's evidence was insufficient to establish that it was he who entered the Levines' home on that date. We disagree.

The two part standard for gauging the sufficiency of evidence in a criminal case is well established. "We first view all of the evidence in the light most favorable to the verdict. We then determine whether a jury could have reasonably concluded, from that evidence and all the reasonable inferences which it yields, that the defendant was guilty beyond a reasonable doubt." *State* v. *Parent*, 8 Conn. App. 469, 472–73, 513 A.2d 725 (1986). "The jury may base an inference on facts it finds as a result of other inferences." *State* v. *Little*, 194 Conn. 665, 673, 485 A.2d 913 (1984). Proof beyond a reasonable doubt does not mean proof beyond a possible doubt. Id., 672.

The state's case was based on circumstantial evidence. " ' "There is no distinction between direct and circumstantial evidence so far as probative force is concerned." ' " *State* v. *Heinz*, 193 Conn. 612, 625, 480 A.2d 452 (1984). Indeed, our Supreme Court has stated that circumstantial evidence " 'may be more certain, satisfying and persuasive than direct evidence.' " *State* v. *Taylor*, 153 Conn. 72, 78, 214 A.2d 362 (1965), cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442 (1966), quoting *Michalic* v. *Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S. Ct. 6, 5 L. Ed. 2d 20 (1960).

It is true, as the defendant argues, that the state did not introduce any direct evidence which excluded a possible entry into the Levine home by means other than through the locked front door. There was no evidence of a lack of forced entry through windows or through the back door. There was, however, circumstantial evidence presented from which the jury could infer an unlawful entry by the defendant.

First, the jury could reasonably have found that the defendant possessed the two stolen watches after the burglary. DiMiero testified that the defendant came into his jewelry store "in the latter part of February," "in the beginning months of 1983," "the end of January the beginning of February," and "within a few weeks" prior to March 9, 1983.[3] While DiMiero's testimony is imprecise and at times contradictory about the date of the defendant's visit and, consequently, subject to more than one interpretation by the jury, it nonetheless constitutes a sufficient basis on which the jury could conclude that the defendant visited the jewelry store after February 21, 1983. "It is clear that, in viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw

[3] That testimony is: "Q. Now, directing your attention to February, *the latter part of February in 1983,* did you have occasion to have any contact with [the defendant] at that particular time?

"A. *Right.* I believe that's when he came into the store . . . .

"Q. So this was the end of February, he showed up and wanted to purchase . . . .

"[DEFENSE COUNSEL]. Objection, I'm not sure he said the end of February.

"A. I didn't, I'm not sure of the exact date.

"The Court: Strike that, please." (Emphasis added.)

DiMiero testified further as follows: "Q. Was [the defendant's visit to the store] in the first part of 1983?

"A. Yes it was.

"Q. And reconstructing when that date would have been, can you tell us what part of 1983 [it] would have been in?

"A. You know, I'm not sure. I would imagine it was probably—It was definitely after Christmas. I would imagine maybe the end of January the beginning of February. . . .

"Q. *Would you estimate that it was in the beginning—sometime in the beginning months of 1983?*

"A. *Yes.*

"Q. The exact date, you're not sure?

"A. No." (Emphasis added.)

DiMiero also testified that on March 9, 1983, he bought some jewelry from the defendant, and that this occasion was "within that same time . . . within, I'd say, a few weeks" of the defendant's initial visit.

only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." *State* v. *Dumlao*, 3 Conn. App. 607, 616–17, 491 A.2d 404 (1985).

Second, the jury could reasonably have inferred a criminal connection with the property from the defendant's possession of two stolen watches shortly after the burglary. "[T]he possession of property recently stolen, if unexplained and standing alone or without other facts pointing to a contrary conclusion, will justify the trier in drawing an inference that the possessor stole the property . . . ." *State* v. *Palkimas*, 153 Conn. 555, 558–59, 219 A.2d 220 (1966). "In other words, the circumstantial evidence of possession of recently stolen property raises a permissible inference of criminal connection with the property . . . ." Id., 559.

Although this rule of inference is usually employed to prove larceny by taking or by receiving; see id., 558–59; under the facts of this case it was permissible for the jury to infer, from the defendant's possession of the two watches, his commission of the crime of burglary. The "inference is one of fact . . . ." Id., 559. Its "soundness . . . involves the probative value of the circumstantial evidence." Id. The probative force of the inference involves "a question of logic rather than a question of law." Id. The process of drawing inferences is particularly a function of the jury. *State* v. *Little*, supra, 673. Thus, where the jury could infer that the two watches were among the jewelry stolen in the burglary, it could also infer from those facts that the possessor of those watches shortly after their theft committed the burglary in which they were stolen.

Third, the jury could reasonably have found that the defendant had the opportunity to enter the Levine

household. He had an opportunity to obtain a key to the house from Dorman who, along with her mother and stepfather, were the only persons with legitimate access to a key. While the defendant presented an alibi defense, a rebuttal witness called by the state gave testimony from which the jury could conclude, even after crediting the alibi testimony, that the defendant nonetheless had an opportunity to enter the Levines' household on the date of the burglary. The inference that the defendant entered the residence with the key was further buttressed by the evidence that this was the only burglary and theft reported in the condominium complex for the entire year.

Fourth, the defendant made statements to DiMiero which evinced a consciousness of guilt. DiMiero testified that approximately one and one-half months before trial, the defendant saw DiMiero and, upon learning that DiMiero had been subpoenaed to testify, told DiMiero that "[s]etting me up with Robin's father, Mr. Levine, was the lowest thing you could have ever done to me." He told DiMiero to disobey the subpoena and not to appear in court. He also told him that he "was going to have Balbusti talk to" him. Balbusti was a person whom DiMiero believed to have a reputation for being rough and intimidating. DiMiero took the remark as a threat. Our law has repeatedly "approved the admission of threats against or attempted intimidation of witnesses as evidence of consciousness of guilt." *State* v. *Leecan,* 198 Conn. 517, 534, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986); see also *State* v. *Maturo,* 188 Conn. 591, 598, 452 A.2d 642 (1982); *State* v. *Brokaw,* 181 Conn. 475, 479, 436 A.2d 6 (1980).

In summary, the jury could reasonably have found that the defendant possessed two of the stolen watches shortly after the burglary took place, that the two watches were taken at the time of the burglary, that

the defendant had the opportunity to commit the burglary, and that the defendant evinced a consciousness of his guilt. From the cumulative effect of this evidence, the jury could reasonably have concluded that the defendant unlawfully entered the Levines' home with intent to commit a crime therein.

## II

The defendant also challenges the evidentiary sufficiency of the conviction of larceny in the first degree on the ground that the evidence is insufficient to establish that he took property worth more than $10,000.[4] We disagree.

As we noted above, the jury was entitled to infer, from the defendant's possession of the two watches, that he stole them during the burglary. *State* v. *Palkimas,* supra, 558–59.[5] Since the state presented evidence that other jewelry was taken during the same burglary, the jury was also entitled to infer that the defendant took all the jewelry stolen during the burglary. That jewelry had a total value of $25,000. See *Aiken* v. *State,* 226 Ga. 840, 845, 178 S.E.2d 202 (1970) (inference of guilt of robbery arises from possession of some, as well as all, of stolen property); see also *State* v. *Davis,* 3 Conn. App. 359, 365–66, 488 A.2d 837 (1985) (jury may infer theft of goods not found in defendant's

---

[4] The defendant also claims that the evidence was insufficient to establish that he took the Levines' jewelry on February 21, 1983. Our discussion in part I of this opinion is dispositive of that claim.

[5] The defendant suggests that, to the extent that the rule articulated in *State* v. *Palkimas,* 153 Conn. 555, 219 A.2d 220 (1966), required him to explain his possession of recently stolen property, it runs afoul of *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), and *Francis* v. *Franklin,* 471 U.S. 307, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985), and his constitutional right to remain silent. Therefore, he claims the rule must be modified. We decline to review this claim because the defendant did not raise it in the trial court and does not claim review in this court pursuant to *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

possession, where evidence exists that all property was stolen at once and the defendant found in possession of most of other stolen property).

*State* v. *Saracino,* 178 Conn. 416, 423 A.2d 102 (1979), on which the defendant relies, is distinguishable. In that case the defendant was charged with larceny in the first degree by receiving stolen property. A codefendant, who was employed at a store, spoke to the defendant about stealing goods from the store and fencing them through the defendant. The codefendant made six deliveries of stolen merchandise to the defendant, the value of which was established at no more than $1000. The store manager's inventory survey revealed that merchandise worth more than $12,000 was missing from the store. The court held that this evidence was insufficient to establish that the defendant had received stolen property worth more than $2000. Id., 421.

The defendant in *Saracino* was charged with larceny by receiving stolen property. We read *Saracino* as holding that there was no basis for an inference that all the property stolen by the codefendant was fenced through the defendant. Thus, there was no basis for an inference that the defendant received all the stolen property. In this case, however, the defendant was charged with larceny by taking property. There was evidence that all of the property was taken at the same time. There was a basis, therefore, from which the jury could infer, because of the defendant's possession of some of the recently stolen property, that he stole it all.

There is no error.

In this opinion the other judges concurred.