STATE OF CONNECTICUT *v.* JOHN FOLSON, JR.
(4791)

BORDEN, SPALLONE and BIELUCH, Js.

Argued February 3—decision released May 5, 1987

---

*Elizabeth A. Curry,* special public defender, for the appellant (defendant).

*Roland D. Fasano,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (3), and assault in the second degree in violation of General Statutes § 53a-60 (a) (2). He claims the trial court erred when it (1) refused to instruct the jury on voluntary intoxication, (2) refused to instruct the jury on self-defense, and (3) denied the defendant's motion for judgment of acquittal on assault in the second degree. We find error.

The testimony presented in this case was often contradictory and confusing, but tends to establish that during either a single incident or closely related separate incidents, Willie Fredericks, Kenneth Murphy and Grant Murphy were shot by the defendant on Christmas morning of 1984. At about 1:30 that morning, Kenneth Murphy and Willie Fredericks went to the defendant's apartment in search of a friend. The defendant invited them in for a few drinks. At about 2 a.m., the three men left the defendant's apartment for an unknown destination and ended up at the apartment of the defendant's father, John Folson, Sr. The defendant went up to the apartment while Willie Fredericks and Kenneth Murphy waited outside. The defendant emerged approximately ten minutes later and, according to the state's version of events, began to scream and shoot at the two men, hitting Willie Fredericks in

the leg with a bullet. Kenneth Murphy was not struck by a bullet at that time, but the defendant hit him in the mouth with the gun.

Willie Fredericks and Kenneth Murphy left the scene and went to the Murphy apartment. Kenneth Murphy told his brothers, Clyde Murphy and Grant Murphy, that the defendant had hit him in the mouth. All three brothers, accompanied by Gail Murphy, their sister, and her boyfriend, Steven Branham, left the house in search of the defendant. Kenneth Murphy was armed with a metal pipe. The brothers went to the apartment of John Folson, Sr., and began yelling for the defendant to come down. The defendant eventually appeared in a clearing near the middle of the apartment complex. As the Murphy brothers approached the defendant, he fired more shots into the ground. When Kenneth Murphy raised a metal pipe at the defendant, the defendant fired more shots. There was testimony that Willie Fredericks was with the group that converged on the defendant. Willie Fredericks, Kenneth Murphy and Grant Murphy received gunshot wounds.

The defendant was charged in three counts: (1) assault in the first degree against Willie Fredericks in violation of General Statutes § 53a-59 (a) (3);[1] (2) assault in the first degree against Kenneth Murphy in violation of General Statutes § 53a-59 (a) (1); and (3) assault in the second degree against Grant Murphy in violation of General Statutes § 53a-60 (a) (2).[2] The defendant was convicted on counts one and three but acquitted on count two.

---

[1] General Statutes § 53a-59 (a) provides in pertinent part: "A person is guilty of assault in the first degree when: . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person."

[2] General Statutes § 53a-60 (a) provides in pertinent part: "A person is guilty of assault in the second degree when: . . . (2) with intent to cause

## I

The defendant first claims that the trial court erred in failing to charge, as requested, on self-defense.[3] He claims that sufficient evidence was presented at trial to justify the charge. The state, on the other hand, argues that the evidence was insufficient to support a self-defense charge. It further claims that since the defendant failed to admit the criminal conduct and attempted to present conflicting defense theories, the trial court was justified in its refusal to charge.

"If the defendant asserts a recognized legal defense and the evidence indicates the availability of that defense, such a charge is obligatory and the defendant is entitled, as a matter of law, to a theory of defense instruction. [*State* v. *Rosado,* 178 Conn. 704, 707–708, 425 A.2d 108 (1979)]. '[A] defendant is "entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible . . . . " *United States* v. *Platt,* 435 F.2d 789, 792 (2d Cir. 1970), quoting *United States* v. *O'Connor,* 237 F.2d 466, 474 n.8 (2d Cir. 1956).' *United States* v. *Alfonso-Perez,* 535 F.2d 1362, 1365 (2d Cir. 1976). 'A fundamental element of

physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[3] While the trial court refused the defendant's request to charge, it did instruct as follows on self-defense: "Now, the details really are of no great concern. What's involved here is three assaults. And the question is: Who did them? The hospital records certainly tell you that there were three assaults, according to those records. And it's for you to determine whether or not any self-defense exists. Now, self-defense is negated by the duty to retreat. And, actually, here from what I heard of the evidence, both sides had an opportunity to retreat. And here they were in an open field. It was nobody's home, where sometimes a person can claim the right not to retreat. They were on what appears to be common property in that housing project, and neither one did retreat. So I would say that self-defense does not really appear in this case."

due process is the right of a defendant charged with a crime to establish a defense. *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967) . . . .' " *State* v. *Fuller,* 199 Conn. 273, 278, 506 A.2d 556 (1986).

Self-defense is a recognized defense; see General Statutes § 53a-19; which may be raised by way of justification pursuant to General Statutes § 53a-16. With respect to the burden of proof, "[w]hen a defense other than an affirmative defense, is raised at a trial, the state shall have the burden of disproving such defense beyond a reasonable doubt." General Statutes § 53a-12 (a). Therefore, the defendant was entitled to have the matter submitted to the jury if there was sufficient evidence presented at trial to raise a reasonable doubt concerning justification. *State* v. *Cassino,* 188 Conn. 237, 243, 449 A.2d 154 (1982). We conclude that sufficient evidence was produced to entitle the defendant to an instruction on self-defense.

In reviewing the trial court's failure to charge as requested, " 'we must adopt the version of facts most favorable to the defendant which the evidence would reasonably support.' " *State* v. *Fuller,* supra, 275. Our review of the evidence reveals the following. After the initial encounter between the defendant and Willie Fredericks and Kenneth Murphy, wherein the latter was struck by the defendant, Kenneth Murphy returned to his apartment and rallied together a group to retaliate. The group consisted of Kenneth Murphy, his two brothers, Clyde Murphy and Grant Murphy, his sister and her boyfriend, and Willie Fredericks. Kenneth Murphy was armed with a metal table leg. Two witnesses to the shooting testified that others besides Kenneth Murphy were armed with weapons. The group went to the apartment of John Folson, Sr., and began yelling for the defendant to come out. The defendant appeared in the middle of the housing complex and,

when the group began to converge upon him, fired some warning shots. When Kenneth Murphy raised the table leg to hit the defendant, the defendant fired more shots. This evidence was sufficient to raise a reasonable doubt as to whether the defendant had acted in self-defense. It was therefore error for the trial court to refuse to charge as requested.[4]

We reject the state's claim that the defendant is not entitled to a self-defense instruction because he did not admit the crime and, in fact, presented a conflicting theory of defense, namely, that his father did the shooting. At trial, John Folson, Sr., appeared as a witness for the defense and testified that shots fired from his gun wounded the three victims. The state relies on *State* v. *Zayas,* 3 Conn. App. 289, 489 A.2d 380 (1985), and *State* v. *Cassino,* supra, for its position.

In *State* v. *Cassino,* supra 243, our Supreme Court quoted the following portion of *State* v. *Rosado,* supra, 707: "When a defendant *admits* the commission of the crime charged but seeks to excuse or justify its commission . . . a theory of defense charge is appropriate." (Emphasis added.) The court observed in *State* v. *Cassino,* supra, that requests to charge have been denied when an admission is lacking. In that case, the court refused to instruct on self-defense because such an instruction would have had the effect of *contradicting* the evidence presented by the defendant which supported a defense theory of accident. In *State* v. *Zayas,*

---

[4] There was conflicting testimony as to whether Willie Fredericks was shot at this time or during an earlier incident. Since we must view the evidence in a light most favorable to the defendant's request to charge; *State* v. *Fuller,* 199 Conn. 273, 278, 506 A.2d 556 (1986); we will treat the evidence as supporting the defense theory that all the shootings occurred during one incident. Therefore, our holding that the defendant was entitled to an instruction on self-defense applies to count one of the complaint charging an assault on Willie Fredericks, as well as to count three of the complaint charging an assault on Grant Murphy.

supra, this court upheld the trial court's refusal to instruct on self-defense because the charge would have directly contradicted the defendant's *own trial testimony* that he never possessed the gun that caused the injuries.[5]

We take this opportunity to clear up some confusion in this area. First, as we noted in *State* v. *Brelsford,* 6 Conn. App. 701, 703, 507 A.2d 491 (1986), we do not read *State* v. *Rosado,* supra, as holding that whenever a defense is raised, the defendant must admit the crime in order to receive a jury charge on his theory of defense. Nor could *State* v. *Rosado,* supra, be so read in light of the clear holding of *State* v. *Harris,* 189 Conn. 268, 455 A.2d 342 (1983). In that case, our Supreme Court was faced with a claim by the state that the defendant, in order to utilize an alternative defense, "should 'at least' concede his participation in the crime." Id., 272. The court disagreed: "To compel a defendant to admit guilt in order to invoke a defense effectively relieves the prosecution of proving his guilt beyond a reasonable doubt and frustrates the assertion of the defense itself and undermines its policy."[6] Id.,

---

[5] *State* v. *Zayas,* 3 Conn. App. 289, 489 A.2d 380 (1985), is distinguishable from the present case since the defendant in *Zayas* affirmatively testified to facts that were in direct contradiction to his request to charge. In this case, the defendant did not testify and, therefore, there is no direct contradiction. In *Zayas,* to allow the charge would have led to an absurd result, namely, if the jury found for the defendant on his self-defense claim, they would have had to conclude he was lying in his trial testimony.

[6] In *State* v. *Harris,* 189 Conn. 268, 274 n.4, 455 A.2d 342 (1983), our Supreme Court distinguished the line of cases requiring a defendant to admit committing the crime charged before permitting an instruction on the defense of entrapment. See *State* v. *Hawkins,* 173 Conn. 431, 436, 378 A.2d 534 (1977); *State* v. *Avery,* 152 Conn. 582, 584, 211 A.2d 165 (1965). The court stated: "[W]e distinguish those cases where the failure of the defendant to concede his commission of the prohibited act which he claimed to have been induced by police misconduct was partly relied upon in determining that the evidence was insufficient to support a defense of entrapment." *State* v. *Harris,* supra.

273. In *State* v. *Harris,* supra, the defendant had testified at trial that he did not participate in the robbery, and posited an alibi defense. He nonetheless sought an instruction on an affirmative defense, pursuant to General Statutes § 53a-134 (a) (4), namely, that the gun used in the robbery was a toy, incapable of firing a shot. Our Supreme Court, therefore, was also faced with the state's claim that a defendant should not be able to put forth inconsistent defenses. The court again disagreed: "Generally, inconsistent defenses may be interposed in a criminal case. . . . That a defense is interposed which is inconsistent with the defendant's alibi does not preclude an instruction as to that defense. . . . '[T]he fact that one defense is on the theory that [the] accused did *not commit the offense, as where he relies on alibi, does not deprive him of the right to avail himself of other defenses. . . . ' 22 C.J.S., Criminal Law § 54 . . . ." (Citations omitted). *State* v. *Harris,* supra, 273. On the basis of *State* v. *Harris,* supra, we reject the state's claim.

## II

The defendant next claims[7] that the trial court erred when it refused to charge the jury that they could conclude that intoxication negates criminal intent. The defendant requested such a charge, and excepted to the trial court's refusal to grant his request.[8] We agree with the defendant.

[7] While our conclusion as to the defendant's first claim is dispositive of this appeal we will nonetheless review his second claim of error since it might recur on a new trial.

[8] While the trial court refused the defendant's request to charge, it did instruct as follows on intoxication: "And speaking of intoxicating, *there's no evidence here that the intoxication affected anyone.* And even if there were, that is, somebody was drinking, obviously, but nobody ever said that somebody's mind was impaired to the point where the law would forgive them, which only comes about really when a person has been drinking so much for so long that his mind has deteriorated and is not capable of forming an intent."

General Statutes § 53a-7 provides, in relevant part: "Intoxication shall not be a defense to a criminal charge, but in any prosecution for an offense evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime charged . . . . " Intoxication is admissible to negate intent when proof of specific intent is an element of the crime charged. *State* v. *Shine,* 193 Conn. 632, 479 A.2d 218 (1984); *State* v. *Brelsford,* supra, 704. Assault in the second degree, as charged in the third count of the information, requires proof of "an intent to cause physical injury"; see footnote 2; and, therefore, an instruction on intoxication would be warranted if sufficient evidence was introduced to justify it.[9] The defendant claims that sufficient evidence of intoxication was produced during the trial to raise the issue and that the trial court misconceived the extent of the defendant's threshold burden when it refused to instruct as requested. The state, on the other hand, argues that there was insufficient evidence to justify the requested charge.

" 'Since the state had the burden of proving [intent to cause physical injury], the quantum of evidence essential to warrant consideration of the effect of intoxication on the defendant can be no greater than that which *might have raised a reasonable doubt* as to the existence of the specified mental state.' (Emphasis added.) [*State* v. *Carter,* 187 Conn. 611, 627–28, 458 A.2d 396 (1984)]." *State* v. *Brelsford,* supra, 706. Viewing the evidence in the light most favorable to supporting the requested jury charge; *State* v. *Fuller,* supra,

---

[9] This claim of error cannot be raised with respect to the defendant's conviction under General Statutes § 53a-59 (a) (3), since that section punishes reckless conduct. General Statutes § 53a-7 specifically precludes the defendant from introducing evidence of self-induced intoxication when recklessness or negligence is an element of the crime. See *State* v. *Shine,* 193 Conn. 632, 639, 479 A.2d 218 (1984) (defendant's claim that intoxication should be admissible on charge of violation of § 53a-59 (a) (3) rejected).

275; we conclude that the defendant has passed the threshold burden required by *State* v. *Brelsford,* supra.

With respect to the defendant's alcohol consumption, the following was revealed: Willie Fredericks testified that when he and Kenneth Murphy arrived at the defendant's apartment sometime after 1 a.m., they sat around drinking Jack Daniels for approximately twenty minutes. Willie Fredericks testifed that the defendant was drinking at the time. At about 1:20 a.m., the three men left the defendant's apartment. Soon thereafter, they arrived at the apartment of John Folson, Sr. The defendant went upstairs while the two others remained downstairs. The defendant's father testified that during the ten to fifteen minutes that the defendant was in his apartment, he consumed two or three drinks. This testimony tends to demonstrate that during a period of from thirty minutes to an hour, the defendant was drinking and consumed several drinks. It was approximately fifteen minutes after leaving the apartment of John Folson, Sr., that the shooting incident occurred. A witness to the incident testified that the behavior and loudness of the defendant and other participants led her to conclude that they all had been drinking. Further, the nature of the defendant's conduct during the incident was described to the investigating officer by Grant Murphy, Clyde Murphy and Willie Fredericks as "crazy." We conclude that this evidence of intoxication, while admittedly minimal, was sufficient to raise a reasonable doubt as to the existence of the requisite intent. Therefore, the trial court erred in refusing to charge upon intoxication, as requested, in relation to the specific intent required by General Statutes § 53a-60 (a) (2).

We reject the state's claim that evidence of ingestion of alcohol is insufficient to merit a charge on intoxication absent direct evidence regarding the effect of the alcohol on the defendant's mental state. The state

points to *State* v. *Carter,* supra, and *State* v. *Brelsford,* supra, as examples of cases where the defendant provided direct evidence of the effect of the alcohol on his mental state. In *State* v. *Carter,* supra, 627, the defendant's confession was introduced at trial which included an admission that the defendant was "really fucked up on speed, booze and reefer." In *State* v. *Brelsford,* supra, 704, the defendant testified on direct and cross-examination that he was drunk. In this case, the defendant did not provide direct evidence about the effect of alcohol on his mental state. The state argues, therefore, that he should not be entitled to an instruction on intoxication. We disagree, since there was sufficient circumstantial evidence from which the jury could infer the effect of the alcohol on the defendant. The jury is entitled to infer impairment "because it is an effect which is common knowledge and is an inference which is clearly within the ability of the jurors, as laypersons, to draw based on their own common knowledge and experience." *State* v. *Heinz,* 3 Conn. App. 80, 86, 485 A.2d 1321 (1984). Therefore, the failure of the defendant to provide direct evidence of the effect of the alcohol on his mental state did not justify a refusal to charge on intoxication.

## III

The defendant's final claim is that the trial court erred when it failed to grant the defendant's motion for judgment of acquittal on the third count of the information charging him with intentional assault in the second degree on Grant Murphy.[10] The defendant claims that since the jury acquitted him of the intentional assault on Kenneth Murphy, it necessarily follows that it should have acquitted him of the intentional assault

[10] Despite our decision on the defendant's first claim, which requires a new trial on the two counts of which the defendant was convicted, we must review the defendant's claim of insufficient evidence since, if he prevailed on this claim, he would be entitled to a judgment of acquittal.

on Grant Murphy, since liability was based on a transferred intent theory. We disagree.

"The two part standard for gauging the sufficiency of evidence in a criminal case is well established. 'We first view all of the evidence in the light most favorable to the verdict. We then determine whether a jury could have reasonably concluded, from that evidence and all the reasonable inferences which it yields, that the defendant was guilty beyond a reasonable doubt.' *State* v. *Parent,* 8 Conn. App. 469, 472–73, 513 A.2d 725 (1986). 'The jury may base an inference on facts it finds as a result of other inferences.' *State* v. *Little,* 194 Conn. 665, 673, 485 A.2d 913 (1984). Proof beyond a reasonable doubt does not mean proof beyond a possible doubt. Id., 672." *State* v. *Liscio,* 9 Conn. App. 121, 125, 516 A.2d 1366 (1986), cert. denied, 202 Conn. 803, 519 A.2d 1208 (1987).

The third count of the defendant's information charged that the defendant "with intent to cause physical injury to another person, did cause such injury to such person *or a third person,* to wit: Grant Murphy." (Emphasis added.) A review of the evidence reveals that it was more than sufficient to support a jury finding that a bullet intended for Kenneth Murphy and fired after he swung the pipe at the defendant, hit Grant Murphy instead. We do not find this conclusion inconsistent with the jury's decision to acquit the defendant of the assault on Kenneth Murphy. Even if we were to so find, " '[t]he short answer to this claim is that inconsistency of the verdicts is immaterial.' *State* v. *Rosado,* [supra, 708–709]." *State* v. *Jackson,* 194 Conn. 241, 243, 478 A.2d 1018 (1984).

There is error, the judgment is set aside as to counts one and three and the case is remanded for a new trial on those counts.

In this opinion the other judges concurred.