STATE OF CONNECTICUT *v.* HENRY MONTGOMERY, JR.
(8460)

DUPONT, C. J., DALY and NORCOTT, Js.

Argued April 3—decision released July 17, 1990

*Otto P. Witt,* special public defender, for the appellant (defendant).

*Judith Rossi,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Herbert Carlson, Jr.,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant was convicted, after a jury trial, of one count of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1), three counts of attempted assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-59 (a) (1), one count of conspiracy to commit manslaughter in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-55 (a) (1) and one count of conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-59 (a) (1). The defendant filed a motion for judgment of acquittal, which was denied. The court sentenced the defendant to twenty years on each of the six counts, with all terms to run concurrently, for a total effective sentence of twenty years. On appeal, the defendant claims (1) that his conviction of either con-

spiracy to commit assault in the first degree or con-
spiracy to commit manslaughter in the first degree
must be set aside, (2) that the prosecutor's summation
to the jury was prejudicial to him because it contained
statements that were not in the record, (3) that the jury
should have specified whether it found him guilty as
a principal or an accessory, (4) that his conviction on
three counts of attempted assault constitutes double
jeopardy, and (5) that the evidence was insufficient for
the jury to find beyond a reasonable doubt that he was
guilty of manslaughter in the first degree. We reverse
in part and affirm in part the judgment of the trial
court.

The jury could reasonably have found certain rele-
vant facts. On the evening of November 17, 1987, the
victim drove with three companions to the Martin
Luther King, Jr., housing project in Hartford. The four
young men stood near the victim's car, across from
building 97, drinking beer.

Around the same time that evening, the defendant
met his girl friend, Kelly Plummer, and Cheryl Moreno
near a neighboring housing project. When the defend-
ant hugged his girl friend, Plummer and Moreno heard
a gun fire. The defendant removed what the young
women described as an "automatic" handgun from the
front of his pants and the defendant said that he
thought he had just accidentally shot himself. He
unloaded the gun, then placed it once again in the front
of his pants. He and the women then walked to the Mar-
tin Luther King, Jr., project, where they met Lorne
Dyson, Kyler Roberts, and two others. Dyson also had
a handgun.

When the group was informed that some men from
Albany Avenue were near the project, the young men
discussed the possibility of shooting the Albany Ave-
nue men. Dyson said to the defendant, "Want to get
them?" and "You with it?" The defendant replied,

"Yeah," or "Yeah, yeah, yeah." When Roberts objected to the idea of shooting anyone, saying that it was not right and that he would not want anyone to shoot at him, the defendant said, "Ha." The defendant and Dyson became angry at Roberts, who, at that point, left the group.

The defendant and Dyson then checked their guns and the defendant reloaded his gun. The defendant said, "Let's just scare them," or "Let's go scare them," whereupon Dyson, the defendant and another man headed toward the dumpster adjacent to building 97. Other males were also standing near the dumpster. The testimony was that two of the men standing in the same location were holding guns.

Between four and ten shots were heard, apparently fired from the dumpster area at the four men standing near the victim's car, several hundred feet away, but no one saw who was firing. Two types of gunfire were reportedly heard—one fast and the other louder and slower. The victim was struck in the temple by a .22 calibre bullet, although an expert witness later testified that it could not be determined whether the shot was fired from any of the six spent .22 calibre cartridges found near the dumpster or whether it had been fired from a revolver, an automatic or even a rifle.

Also around this time, the defendant's girl friend and Moreno, who were still at the neighboring housing project, heard between four and six shots fired, and observed Dyson and the defendant running toward them. The two young men ran down the stairs into a basement area, where they changed their clothes, and a few minutes later, rejoined the young women. Moreno testified that the young men said something like, "We shouldn't have done that. We only meant to scare them."

The victim died seventeen days after this incident as a result of the gunshot wound. No weapon was ever found, but at the autopsy a .22 calibre bullet was removed from the victim's brain.

## I

The defendant claims that the prohibition against double jeopardy is violated by his convictions of both conspiracy to commit manslaughter in the first degree and conspiracy to commit assault in the first degree. Before we reach that issue, however, we must determine the effect of the acquittal of the defendant's alleged coconspirator of both conspiracy charges. We must also address the state's concession that conspiracy to commit manslaughter under General Statutes § 53a-55 (a) (1) may not be a cognizable crime.

Conspiracy is a crime that, by its very nature, requires two participants. *State* v. *Robinson,* 213 Conn. 243, 253, 567 A.2d 1173 (1989). The concept of a conspiracy of one can be likened to the sound of one hand clapping—it is an impossibility. Here, the defendant was convicted of conspiracy to commit assault in the first degree after his only alleged coconspirator had been found not guilty of the same charge. Without a coconspirator, the defendant's conviction of conspiracy to commit assault in the first degree cannot stand.

The state concedes that conspiracy to commit manslaughter under General Statutes § 53a-55 (a) (1) may not be a legally cognizable crime. A conspiracy conviction requires that the defendant have *intended* to commit the elements of the offense. *State* v. *Beccia,* 199 Conn. 1, 3–4, 505 A.2d 683 (1986). Manslaughter in the first degree entails an intent to inflict serious bodily injury where an *unintended* death results. General Statutes § 53a-55 (a) (1). Conviction of that crime does not encompass an intent that death, an element of the crime, result. It is, therefore, not logically possible to

conspire to commit that crime, one element of which is an unintentional killing. In other words, it is impossible to intend to commit an act unintentionally. The conviction of conspiracy to commit manslaughter in the first degree must, therefore, be set aside.

Because we reverse these two convictions, we do not reach the defendant's double jeopardy claim.

## II

The defendant next claims that the prosecutor's summation to the jury was prejudicial to him because it contained statements that were not in the record. Specifically, he complains of the prosecutor's statement in his summation that Moreno, on direct examination, said that Dyson and the defendant talked the loudest and most about the shooting and of the prosecutor's statement in his rebuttal that "there is plenty of evidence, including the words, 'Let's go get them; let's kill, let's shoot' or however it's phrased."

The defendant made no objection, during or immediately after the summation, to the words or behavior attributed to the defendant by the state. When the trial court excused the jury for the day, however, defense counsel did object to the earlier comments and correctly stated that there was no testimony indicating that the defendant had uttered the words, "Let's kill." Characterizing the prosecutor's statement as "very prejudicial," the defendant requested that the court review Moreno's testimony, instruct the jury to disregard the prosecutor's statement and give a curative instruction.[1]

---

[1] The defendant specifically claims prejudice in that the remarks to which he objects "were critical to the issue of intent." The jury, however, ultimately convicted the defendant not of murder, but of the lesser included offense of first degree manslaughter, requiring an intent only to inflict serious bodily injury, rather than an intent to cause death. The jury, therefore, did not believe that the defendant intentionally murdered the victim, and the defendant was not prejudiced in this respect by any misstatement in the summation.

The court, in response to that request, gave a curative instruction, to which the defendant again objected because, in it, the court failed to tell the jury specifically that Moreno did *not* testify that either Dyson or ·the defendant had said, "Let's shoot them" or "Let's kill them."[2] The court then reinstructed the jury for the second time specifically indicating that Moreno had given no such testimony. The defendant neither objected to the second curative instruction, nor moved for a mistrial.

The claimed inadequacy of the second curative instruction was not raised at trial and, on appeal, the defendant does not claim review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). We do not review this claim.

### III

The defendant next claims that the jury should have specified whether it found him guilty as a principal or as an accessory to the attempted assault and manslaughter charges. As the state indicates, however, the court did not instruct the jury on accessorial liability on the attempted assault counts. Thus, the claim as to this issue could relate only to the conviction of manslaughter.

The defendant argues that commission of a crime as a principal and the commission of a crime as an accessory constitute alternative means of committing that crime. He, therefore, argues that it was a violation of his due process rights for the jury to find him guilty of these crimes without specifying which type of liability it attributed to him. He contends that some jurors

---

[2] The defendant first objected only to the words "Let's kill" being attributed to him. When he subsequently objected to the first curative instruction given, however, he objected to the words "Let's shoot them" and "Let's kill them."

may have found him guilty as a principal and some as an accessory, thereby making it possible for the jury to have convicted him of the crimes when they did not agree on the theory under which he was liable.

The case law is clear that " 'there is no practical significance in being labeled an "accessory" or a "principal" for the purpose of determining criminal responsibility. . . . The modern approach "is to abandon completely the old common law terminology and simply provide that a person is legally accountable for the conduct of another when he is an accomplice of the other person in the commission of the crime. . . .'" Connecticut has taken the same approach through General Statutes § 53a-8.' " (Citations omitted.) *State* v. *Foster*, 202 Conn. 520, 532–33, 522 A.2d 277 (1987).

In *State* v. *Smith*, 212 Conn. 593, 563 A.2d 671 (1989), the defendant appealed his conviction of murder and conspiracy to commit murder. He argued that the trial court should have required that the jury reach unanimous agreement on whether he was guilty as an accessory or as a principal. The court, quoting *State* v. *Bailey*, 209 Conn. 322, 334, 551 A.2d 1206 (1988), held that " ' "[w]here a trial court charges a jury that the commission of any one of several alternative acts would subject a defendant to criminal liability, a unanimity charge on a specific act is required only if two conditions are met: (1) the alternative acts are *conceptually distinct* from each other; *and* (2) the state has presented *supporting evidence* on each alternative act." ' " (Emphasis in original.) *State* v. *Smith*, supra, 604–605.

The *Smith* court also held that where the two ways in which the crime may be committed are practically indistinguishable, the alternative bases of liability, either as principal or accessory, are not conceptually distinct. Id., 605. Both the courts in *United States* v. *Petersen*, 768 F.2d 64 (2d Cir.), cert. denied, 474 U.S.

923, 106 S. Ct. 257, 88 L. Ed. 2d 264 (1985), and in *State* v. *Smith*, supra, 605, found that in a case involving potential accessory liability, a jury verdict should be considered unanimous even if some jurors had found the defendant guilty as a principal, and others, as an accessory. The defendant's claim must, therefore, fail.

## IV

The defendant next challenges his convictions on three counts of attempted assault in the first degree. The defendant claims that the evidence was insufficient to support each count of attempted assault. He claims that failure to specify the alleged victim of each of the three counts respectively in either the information or the verdict rendered him unable to defend himself against the three separate charges and resulted in the failure of the state to prove each element of the charge as to each victim.[3] He further claims that, because the three alleged assaults arose from the same transaction, they constitute the same offense, and that conviction for three separate attempted assaults, therefore, constitutes multiple punishment for the same offense, violating the prohibition against double jeopardy.

In reviewing a claim of insufficient evidence, we first view the evidence in the light most favorable to sustaining the verdict. *State* v. *Folson,* 10 Conn. App. 643, 654, 525 A.2d 126 (1987). Then we determine whether, on the basis of the evidence presented and all the reasonable inferences that could have been drawn from it, the jury could reasonably have concluded beyond a reasonable doubt that the defendant was guilty. Id.

Evidence was presented at trial that three companions were standing near the victim at the time of the shooting and that one of them, in fact, heard a bullet whizzing past him, near his head. The evidence further

[3] The defendant was charged by short form information and failed to ask for a bill of particulars.

indicated that multiple shots were heard, that the defendant was present with a loaded gun in his possession, that six spent shells found near the dumpster after the shooting could have been fired from the type of gun described by the two young women as having been in the defendant's possession, that the defendant suggested trying to scare the group of young men from Albany Avenue who were fired on shortly thereafter, that he participated in the discussion about "getting," shooting or killing someone, and that immediately after the shooting, the defendant came running back from the area from which the shots were fired saying, "I don't believe we did this," and ran into a basement to change his clothes. The evidence introduced was sufficient for the jury to conclude that the defendant fired his gun at the group of four young men intending to cause them serious physical injury.

The prosecutor stated in his closing argument that Bennie Pierce, Jerry Pierce and Bobby Shipman, in that order, were the victims of the attempted assaults. In its charge to the jury, the court stated: "[T]hose three counts are . . . that these attempted assaults were against Bennie Pierce, Jerry Pierce and Bobby Shipman." Thus, both the defendant and the jury had to have known who was the intended victim of each respective count. Neither the presentation of a defense nor the deliberations of the jury could have been impaired by any lack of specificity about which count related to which alleged victim.

The defendant argues that because the three counts arose out of a single incident, they constituted a single offense for which only a single punishment could be imposed. That argument is also unavailing. In *State v. Couture*, 194 Conn. 530, 565–66, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985), where the defendant claimed that his sentence to three consecutive terms for murder aris-

ing out of a single incident constituted double jeopardy, the court stated: "The statute refers to the death of '[another] person' in the singular. A fundamental purpose of the criminal law is to protect individual citizens from the criminal conduct of another. People are neither fungible nor amorphous. Where crimes against persons are involved, a separate interest of society has been invaded for each violation. Therefore, when two or more persons are the victims of a single episode there are as many offenses as there are victims. . . . As the Wyoming Court so aptly stated [in *Vigil* v. *State,* 563 P.2d 1344, 1351 (Wyo. 1977)]: 'It must be noted that "any human being" is in the singular and there is no indication that the defendant can get a bargain rate if he assaults a group of human beings.' " (Citation omitted.)

The statute under which the defendant in the present case was charged, § 53a-59 (a) (1), is also phrased in the singular. Measured under the previously discussed standard for review of a claim of sufficiency of the evidence, the evidence, also previously discussed, was sufficient for the jury to have concluded that the defendant fired at the group of men with the intent to cause serious physical injury to each of them. There are, therefore, three victims and three crimes of attempted assault. The convictions of the defendant on three counts of attempted assault in the first degree, therefore, did not constitute double jeopardy.

V

Finally, the defendant claims that the evidence presented was insufficient for the jury to have found beyond a reasonable doubt that he was guilty of intentional manslaughter in violation of § 53a-55 (a) (1). That section provides: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the

death of such person or a third person." The state, therefore, had to prove beyond a reasonable doubt both that the defendant possessed the requisite intent and that he, in fact, caused the victim's death.

On the basis of our review of the evidence previously discussed, we conclude that the jury could reasonably have found that the defendant in this case, with the intent to cause serious physical harm, caused the death of the victim.

The judgment is reversed as to the convictions on the charges of conspiracy to commit manslaughter in the first degree and conspiracy to commit assault in the first degree and the case is remanded with direction to render judgment of acquittal thereon.[4] The judgment is affirmed as to the conviction of three counts of attempted assault in the first degree and of manslaughter in the first degree.

In this opinion the other judges concurred.

---

[4] Because the defendant's twenty year sentences on the two convictions on which we reverse were to run concurrently with the twenty year sentences on each of the other charges, we need not order that the defendant be resentenced. *State* v. *Thomas,* 210 Conn. 199, 213 n.13, 554 A.2d 1048 (1989).