STATE OF CONNECTICUT *v.* RAYMOND JACKSON
(10848)

HEALEY, PARSKEY, SHEA, GRILLO and COVELLO, Js.

Argued June 13—decision released August 14, 1984

*Max. F. Brunswick,* for the appellant (defendant).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, *Robert J. Devlin,* assistant state's attorney, and *Mary L. Esten,* legal intern, for the appellee (state).

PARSKEY, J. In a three count information the defendant was charged with one count of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2) and two counts of attempted robbery in violation of

§§ 53a-49 and 53a-135 (a) (1), one involving Roosevelt Archie, the other involving Irene Neal. After a trial to the jury the defendant was convicted of the burglary charge and the attempted robbery of Archie but acquitted of the attempted robbery of Neal. In his appeal the defendant claims that the two convictions were factually inconsistent with the acquittal and in addition were unsupported by the evidence.

The jury could reasonably have found the following facts. On the night of March 1, 1979, at approximately 8:30 p.m., Roosevelt Archie and Irene Neal were playing cards in their second floor apartment at 135 Starr Street, New Haven. Hearing the sound of breaking glass on the first floor, Archie descended the stairs to investigate but was unable to open the door to the then vacant first floor apartment. He went back upstairs, retrieved a piece of board to pry open the barricaded door and returned to the first floor. As Archie tried to open the door, he saw three black males who grabbed him, pulled him inside and threw him to the floor. One of the assailants put his foot on Archie's throat, inflicting pain, while another straddled him and went through his pockets. Archie was unaware of the location of either the third assailant or Neal during this time. Although he was unable to describe any of the assailants, Archie did hear one of them say, "Pete, let's go." The defendant, Raymond Jackson, is commonly known in the neighborhood as "Pete." After being released, Archie returned to the second floor to find the apartment ransacked.

In the meantime, Neal had followed Archie downstairs and was accosted in the first floor hallway by one of the assailants. He grabbed her, struck her head against the wall and went through her clothing. When released, Neal ran upstairs, picked up one of her dogs and returned downstairs to throw the dog at the assailant. She saw two of the men run past her up to the

second floor and later run down the street with a shopping bag. Neal then ran to the corner grocery store for help. Based on the lighting from the hallway and from an outside streetlight, Neal was able to describe her attacker to the police.

James McDaniel was working at the corner grocery store that night when Neal entered in an excited state. Although he could not leave the store, McDaniel stepped outside and saw the defendant, a neighborhood resident he knew as "Pete," running off the porch of 135 Starr Street. He was carrying a shopping bag and wearing a sweater. McDaniel later observed the defendant, then wearing just a jacket, enter the Seven/Eleven Club, a bar on nearby Winchester Avenue.

On the basis of a description of the defendant given by Neal and others at the scene, and his identification as "Pete," Officers Joseph D. Boyd and Edward Maturo of the New Haven police department proceeded to the Seven/Eleven Club and found the defendant in the bathroom changing his clothing. Boyd knew the defendant personally as "Pete" and requested that he return to 135 Starr Street with him. The defendant was identified by Neal and was then placed under arrest. The police officers also investigated the scene of the crime and confirmed the broken first floor apartment window and the ransacked condition of the second floor apartment. The first floor apartment was vacant.

We first consider the defendant's claim that the verdicts were inconsistent. Even if we assume that the verdicts were inconsistent, "[t]he short answer to this claim is that inconsistency of the verdicts is immaterial." *State* v. *Rosado,* 178 Conn. 704, 708–709, 425 A.2d 108 (1979); *Hamling* v. *United States,* 418 U.S. 87, 101, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974); *Dunn* v. *United States,* 284 U.S. 390, 393–94, 52 S. Ct. 189,

76 L. Ed. 356 (1932); *State* v. *Manning,* 162 Conn. 112, 122, 291 A.2d 750 (1971); see also annots., 18 A.L.R.3d 259; 16 A.L.R.3d 866.

We next turn to the defendant's second claim that the evidence was insufficient to support the conviction. The defendant was charged with burglary in the first degree in violation of General Statutes § 53a-101 (a) (2).[1] It is a violation of this statute for a person to enter or remain unlawfully in a building with the intent to commit a crime therein and in the course of committing the offense intentionally, knowingly or recklessly to inflict or attempt to inflict bodily injury on anyone. There was sufficient evidence that the defendant participated in the burglary: One of the perpetrators was referred to as "Pete" which is the defendant's nickname; Neal gave a description that matched the defendant and identified him when he was apprehended; and he was seen by a neighbor fleeing the scene of the crime. There was also evidence that one of the participants inflicted bodily injury on Archie. The defendant having participated in the burglary, it was immaterial which participant caused the injury. *State* v. *Parham,* 174 Conn. 500, 507, 391 A.2d 148 (1978).

With respect to the conviction of attempted robbery of Archie, the defendant argues that the state's case against him for that offense was based on his aiding and abetting the other two participants by robbing and restraining Neal and that since he was acquitted of the attempted Neal robbery that acquittal removed an

---

[1] "[General Statutes] Sec. 53a-101. BURGLARY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: . . . (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone.

"(b) An act shall be deemed 'in the course of committing' the offense if it occurs in an attempt to commit the offense or flight after the attempt or commission. . . ."

essential element of the attempted Archie robbery. We do not agree. There was sufficient evidence that the defendant aided the attempted robbery of Archie by restraining Neal, thus preventing her from calling the police. See *State* v. *Pundy*, 147 Conn. 7, 11, 156 A.2d 193 (1959). The defendant's insufficiency claim is merely a reformulation of his earlier claim that the verdicts on the attempted robbery counts were inconsistent. The defendant gains nothing from this reformulation.

There is no error.

In this opinion the other judges concurred.