STATE OF CONNECTICUT *v.* CHANNY NEE KHUTH
(AC 28271)

Flynn, C. J., and Harper and Robinson, Js.

Argued September 24—officially released November 11, 2008

*Jodi Zils Gagne*, special public defender, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *David R. Shannon*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Channy Nee Khuth, appeals from the judgment of conviction of assault in

the first degree in violation of General Statutes § 53a-59 (a) (4), conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-59 (a) (4) and two counts of assault in the first degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-59 (a) (4).[1] The defendant was sentenced to a total effective term of forty years imprisonment, execution suspended after thirty years, with five years of probation. On appeal, the defendant claims that the trial court improperly (1) denied his motion to suppress his statement, (2) failed to alleviate the jury's apparent confusion over the meaning of the word "aided" as used in § 53a-59 and (3) denied his motion for a judgment of acquittal, which he based on his claim that the state failed to prove that he was aided by two or more persons when committing the assault on one of the two victims, Timothy LaPak. We conclude: (1) the court's denial of the defendant's motion to suppress was proper, being supported by substantial evidence; (2) the defendant repeatedly told the court that he did not want additional instructions given to the jury, thereby waiving any claim that the instructions were insufficient; nevertheless, we also conclude that the court's direction to the jury reasonably did clear up any apparent confusion; and (3) there was sufficient evidence for the jury to conclude that the defendant was aided by two or more persons when he committed the assault. Accordingly, we affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, are relevant to our consideration of the issues raised on appeal. On the evening of August 2, 2004, after completing a round of golf and watching a movie, LaPak and the other victim, Kyle Coney, were headed back to their place of employment so that LaPak

---

[1] The defendant's conviction on one count of assault in the first degree as an accessory was merged with his conviction of assault in the first degree.

could pick up his vehicle. The two men were riding in downtown Danbury in Coney's Jeep, which had the top and sides removed on that summer night. Coney realized that an occupant of a blue sedan had thrown an open beer can into the Jeep, wetting the backseat and wetting the back of Coney's neck. As the sedan, which was driven by Amy Altberg, again pulled alongside of the Jeep, Coney threw a water bottle at the sedan. The sedan then began to chase the Jeep, which turned onto a narrow road or alleyway that was blocked by two tractor trailer trucks. After Coney stopped the Jeep, Altberg boxed it in with the sedan so that Coney could not back up. Coney immediately told LaPak to dial 911 on a cellular telephone, but before he could dial, the defendant, Waner Nunez, Thomas Strik, and Altberg exited the sedan, and LaPak was pulled from the Jeep.[2] The defendant and Nunez beat LaPak, repeatedly punching him and kicking him in the head. While LaPak was being beaten, Coney remained strapped in the Jeep holding onto the steering wheel as he also was being kicked and punched in the face. Near the end of the beatings, Altberg approached the Jeep, took a hula girl ornament from the dashboard and told Coney that he "wouldn't be needing it anymore." She then returned to the sedan. Coney believed that there were three individuals beating LaPak. Coney's wallet also was stolen during the attack.

When the assailants ended this brutal attack, they left LaPak on the ground, bleeding profusely from his head. They returned to Altberg's sedan, and she drove away, later purchasing gasoline and cigarettes with a credit card from Coney's stolen wallet. Meanwhile, Coney, bleeding and holding his mouth, ran to the Holiday Diner on White Street, and the manager of the diner

---

[2] Coney testified that he thought two individuals approached the driver's side of the Jeep, while another three individuals approached the passenger side.

telephoned the police. Once the police arrived on the scene, Officer Vincent Daniello of the Danbury police department approached LaPak, who was lying in a pool of blood, initially thinking LaPak had been shot in the head and was dead. Daniello then heard a slight gurgling sound coming from LaPak.

LaPak and Coney were taken to a hospital. LaPak was unconscious for weeks and had very significant injuries, including traumatic brain injury, with impulse control issues and cognizant deficits, memory loss, massive injuries to his face, blunt trauma, massive swelling, a tooth torn from its socket and other cracked teeth, a displaced fracture of his jaw and fractures of the orbital rim or eye socket, and he had to have a feeding tube inserted into his abdomen, into which liquid food was poured for approximately eight weeks. Because of his injuries, LaPak needed physical therapy, speech therapy and occupational therapy. At the time of trial, LaPak continued to have short term memory loss and advanced arthritis in his jaw. Coney had serious injuries to his mouth, had to have his teeth wired and splinted, his gums sewn and, eventually, lost two of his front teeth. He also had bleeding in his ears and sore ribs. The defendant was arrested, charged and convicted. This appeal followed. Additional facts will be added where necessary.

I

On appeal, the defendant claims that the court improperly denied his motion to suppress the statement he made to police. He argues that the statement was not voluntary because he was under the influence of alcohol at the time police took his statement, having consumed approximately one gallon of Hennessy cognac with Strik shortly before his arrest. The state argues that the evidence sufficiently showed that the defendant was not impaired by alcohol at the time he

gave his statement. We agree with the state and conclude that the court did not abuse its discretion in denying the defendant's motion to suppress his statement.

"As an initial matter, we note that [o]ur standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . [When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the court's [ruling]. . . .

"Furthermore, [t]o be valid, a waiver must be voluntary, knowing and intelligent. . . . The state has the burden of proving by a preponderance of the evidence that the defendant voluntarily, knowingly and intelligently waived his *Miranda* rights. . . . In considering the validity of a waiver, we look to the totality of the circumstances of the claimed waiver. . . . Although the issue of whether there has been a knowing and voluntary waiver is ultimately factual, the usual deference to fact-finding by the trial court is qualified in this area by the necessity for a scrupulous examination of the record to ascertain whether such a factual finding is supported by substantial evidence." (Internal quotation marks omitted.) *State* v. *Rice*, 105 Conn. App. 103, 113, 936 A.2d 694 (2007), cert. denied, 285 Conn. 921, 943 A.2d 1101 (2008).

The defendant contends that despite the passage of twenty hours since he had ingested alcohol, he still was intoxicated when he gave the police a written statement. He argues that his testimony at the suppression hearing was supported by the statement itself, which was replete with typographical and grammatical errors,

evincing that he merely wrote what the police instructed him to write. We do not agree. The court had before it the testimony of Detective James Lalli of the Danbury police department, who stated that the defendant did not appear to be under the influence of alcohol. Lalli had spent quite some time with the defendant after his arrest, bringing him to Connecticut from Rhode Island, where he had been located by federal authorities, stopping at a McDonald's restaurant to get food for the defendant, giving him *Miranda* warnings and taking a written statement from him. Additionally, the court had evidence that the defendant had eaten meals and that more than twenty hours had passed from the time that the defendant had last ingested alcohol to the time that he gave his statement to the police.

Specifically, the court found that the defendant had expressed an interest in making a statement, that he had an eleventh grade education, that he was familiar with his rights, that even if he had consumed alcohol more than twenty hours before giving his statement, sufficient time had passed to remedy the effects of the alcohol, that the defendant had eaten two meals while in custody, that Lalli did not believe that the defendant was under the influence of alcohol, that the defendant voluntarily signed a waiver of rights form, that he did not request an attorney, that the statement, although not a "model of English grammar and spelling," was "clear and not reflective of someone who was under the influence of alcohol" and that the statement was comprehensible. Our own review of the record reveals that these findings are supported by substantial evidence. Accordingly, the court did not abuse its discretion in denying the defendant's motion to suppress his written statement.

## II

The defendant next claims that the court improperly failed to alleviate the jury's apparent confusion over

the meaning of the word "aided" as used in § 53a-59.[3] He argues that the court's definition of the word "aided" should "have included references to having the intent to commit the crime and the intent to specifically aid the principal in the commission of the crime." We conclude that the defendant waived any right to challenge this instruction when he specifically told the court that he agreed with the court's definition and that he did not want further instructions. We also conclude, however, that the court's direction to the jury reasonably alleviated any confusion that may have been present.

The court instructed the jury that the term "aided," as used in the charge of assault in the first degree set forth in count one, "means that two or more other persons must have been present and actively assisting or actively helping the defendant in the assault. Mere presence of inactive companions or mere acquiescence or doing of some innocent act that, in fact, aids the perpetrator of the assault does not constitute aid within the meaning of the statute." The defendant voiced no objection to this charge.

After the court had completed its charge to the jury, it received a note from the jury asking for a definition of the word "aided" as it pertained to the charge of assault in the first degree as an accessory set forth in count four. The court told the jury that the term had the same meaning in count four as it had in count one, the charge of assault in the first degree. Later that day, the jury sent another note to the court asking if it could use the definition contained in count four of the long form information. The note specifically stated: "We have found a difference in the definition on [c]ount

---

[3] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (4) with intent to cause serious physical injury to another person and while aided by two or more other persons actually present, he causes such injury to such person or to a third person . . . ."

[four], between the long form and the charge to the jury; specifically, on the long form more verbs, 'did solicit or request or command.' These are absent on the jury charge. Can we use the long form information?" The court did not immediately answer the jury's question but, rather, excused it for the day. When court resumed the next day, the state filed a motion for reconsideration of its original request to charge.

The defendant opposed the state's request and specifically argued: "I think aiding means what we—what was defined by the court in the charge, 'actively assisting and actively supporting.' And I think that's the way it should go to the jury, and anything else, I think, would be improper, inappropriate, it would broaden the definition, which, I think, would . . . be unconstitutional." The court agreed that a broadening of the definition at this stage of the proceedings would "pose a risk to the integrity of any verdict that [the jury] rendered." Accordingly, the court instructed the jury that it could not use the long form information but that it "should go by the charge to the jury rather than the allegations in the long form information." Later that day, the jury returned its verdict.

Our review of the transcripts clearly reveals that the defendant did not want a further instruction given to the jury. For him to argue on appeal that the court should have insisted, despite his vigorous objection, is somewhat disingenuous. See *State* v. *Diaz*, 109 Conn. App. 519, 537, 952 A.2d 124 (it is fundamentally unfair to state and to court for defendant to raise claim on appeal regarding jury instruction on which he was in agreement), cert. denied, 289 Conn. 930, 958 A.2d 161 (2008). A close review of the record leads us to the conclusion that the defendant waived any right to challenge the thoroughness of the court instruction and, in fact, specifically told the court that he agreed with the instruction given. Furthermore, although the defendant

waived the right to challenge the adequacy of this instruction, we also conclude that the instruction was correct in law, following, almost verbatim, the instructions set forth in the Connecticut Criminal Jury Instructions for a charge of assault in the first degree with the aid of two or more persons. See Connecticut Criminal Jury Instructions (2008 Ed.) § 6.1-4 available on the Connecticut Judicial Branch website, http://www.jud.ct.gov/ji/criminal/part6/6.1-4.htm (accessed 11/3/08). Additionally, the court's specific direction to the jury that it could not use the long form information but that it must use the court's instruction regarding the term "aided" reasonably cleared up any confusion that the jury might have had about the proper construction of this term as it related to this case.[4]

### III

The defendant also claims that the court improperly denied his motion for a judgment of acquittal, which he based on his claim that the state failed to prove that he was aided by two or more persons when he allegedly committed the assault on LaPak. He argues that the evidence, at most, demonstrated that he was aided by Nunez in assaulting LaPak, while Strik assaulted Coney and Altberg stayed by the Jeep crying. The state argues

[4] We are not faced with a *Fletcher* type of situation here because rather than ignore the jury's request for clarification, the court specifically responded and told the jury that it could not use the allegations in the long form information and that it must use the instructions given to it by the court. See *State* v. *Fletcher*, 207 Conn. 191, 193, 540 A.2d 370 (1988) ("[c]larification of the instructions when the jury or one of its members manifests confusion about the law is mandatory" [internal quotation marks omitted]); see also Practice Book § 42-27 ("[i]f the jury, after retiring for deliberations, request[s] additional instructions, the judicial authority, after providing notice to the parties and an opportunity for suggestions by counsel, shall recall the jury to the courtroom and give additional instructions necessary to respond properly to the request or to direct the jury's attention to a portion of the original instructions"). The court here firmly and clearly directed the jury to use the proper instructions that it had given, and the jury voiced no further question or concern.

that Altberg admitted that she had acted as a lookout and that this action aided in the assault. Additionally, the state argues that the jury reasonably could have concluded that Strik's assault on Coney also aided the defendant. We agree with the state.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact]

may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Davis*, 283 Conn. 280, 329–30, 929 A.2d 278 (2007).

Construing the evidence in the light most favorable to sustaining the verdict, the jury reasonably could have found the following relevant facts on the basis of the evidence presented at trial. After Coney threw the water bottle at the sedan, the defendant instructed Altberg to follow the Jeep. When the Jeep turned into the alleyway, Altberg also turned and boxed in the Jeep. Altberg anticipated a fight. The defendant and his friends got out of the sedan, and the defendant, Nunez and Strik approached the Jeep while Altberg acted as a lookout. The defendant and Nunez pulled LaPak from the Jeep and beat him to unconsciouness while Strik kicked and punched Coney, who remained in the Jeep. Near the end of the attack, Altberg reached into the Jeep and took an ornament from the dashboard. She told Coney that he would not need it anymore.

The defendant specifically challenges the evidence as being insufficient to prove the "aided by two or more other persons actually present" element of the crime of assault in the first degree. On the basis of the evidence presented, however, we conclude that it would have

been reasonable for the jury to have concluded that Altberg aided in the assault by following the Jeep, by blocking the Jeep from exiting the alleyway and by acting as a lookout. It also would have been reasonable, on the basis of this evidence, for the jury to have concluded that the defendant and his friends decided to attack from both sides of the Jeep so that neither LaPak nor Coney could assist the other or run for help, thereby each aiding the other. See generally *State* v. *Jackson*, 75 Conn. App. 578, 586–87, 816 A.2d 742 (2003) (masked man aided defendant in committing aggravated sexual assault in first degree, which requires aid of two or more persons actually present, by holding other victims at bay, preventing them from calling police or interfering with sexual assault); see also *State* v. *Jackson*, 194 Conn. 241, 245, 478 A.2d 1018 (1984) (evidence that defendant restrained another, preventing her from calling police, sufficient to establish that defendant aided in attempted robbery).

Although the defendant argues that the evidence demonstrated that Altberg was very upset by these events and did not aid in the commission of the assaults, we question the soundness of the defendant's argument in light of the fact that Altberg testified that she blocked in the Jeep, anticipated a fight and acted as a lookout. In addition to Altberg's testimony, the evidence also showed that as the assaults were nearing their end, Altberg reached into the Jeep, took an ornament from the dashboard and addressed an injured and bleeding Coney, telling him he would no longer need the object. Following this brutality, Altberg then used Coney's credit card to purchase cigarettes and gasoline. On the basis of this ample evidence, we conclude that the court acted properly in denying the defendant's motion for a judgment of acquittal.

The judgment is affirmed.

In this opinion the other judges concurred.