******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROGERS, C. J., concurring. I agree with the defendant, Brandon Montrell Bellamy, that this court's marked expansion of the doctrine of implied waiver of claims of jury instructional error in *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011), was mistaken and, therefore, I would overrule that decision and return to the much narrower conception of implied waiver that previously governed our jurisprudence in this area. Application of a more restrictive implied waiver rule leads me to conclude that the defendant's claim of instructional error is reviewable on its merits pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[1] Nevertheless, the defendant's claim fails under *Golding* because it does not raise a claim of constitutional error.[2]

It is well established that "*Golding* [review] is a narrow exception to the general rule that an appellate court will not entertain a claim that has not been raised in the trial court. The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party. . . . Nevertheless, because constitutional claims implicate fundamental rights, it also would be unfair automatically and categorically to bar a defendant from raising a meritorious constitutional claim that warrants a new trial solely because the defendant failed to identify the violation at trial. *Golding* strikes an appropriate balance between these competing interests: the defendant may raise such a constitutional claim on appeal, and the appellate tribunal will review it, but only if the trial court record is adequate for appellate review." (Internal quotation marks omitted.) *Moye* v. *Commissioner of Correction*, 316 Conn. 779, 784–85, 114 A.3d 925 (2015). Upon reflection, I believe that *Kitchens* improperly upset the balance struck by *Golding* for a substantial category of cases, those raising jury instructional error, and did so for questionable reasons. Returning to a narrower implied waiver rule would support the goals of *Golding* yet prevent the abuse of the leniency it affords.

In *Kitchens*, this court announced the following general rule to determine whether a claim of jury instructional error will be deemed to have been waived by trial counsel and, therefore, unreviewable on appeal: "[W]hen the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge

of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal. Such a determination by the reviewing court must be based on a close examination of the record and the particular facts and circumstances of each case." *State* v. *Kitchens*, supra, 299 Conn. 482–83. The court explained that the foregoing rule rests on an "inference, or 'assumption' of fact"; (emphasis omitted) id., 487 n.25; that counsel was aware of the defect later raised on appeal and decided not to assert it at trial, and, therefore, that a waiver could be found without evidence that counsel actually knew of the defect. Id., 483. In that sense, we acknowledged, the implied waiver rule depended on a "legal fiction." Id., 487 n.25.

Upon further consideration, I am convinced that the inference upon which the *Kitchens* rule relied was an unreasonably broad one, and that the circumstances described in *Kitchens* more accurately reflect, in the majority of instances, a forfeiture of the right to claim a specific error in the instructions rather than a waiver of that right.[3] See *State* v. *Davis*, 311 Conn. 468, 495–503, 88 A.3d 445 (2014) (*Palmer, J.*, concurring). As a result, *Kitchens* effectively has carved out a particular category of unpreserved trial error and deemed it unworthy of review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. While *Golding* permits appellate consideration of any other type of unpreserved constitutional claim, *Kitchens* revokes the right to such review by invoking the unrealistic assumption that defendants, through their counsel, knowingly and purposefully have relinquished that right in the described circumstances.[4] In my view, the benefits of this approach do not outweigh the costs, either to defendants with meritorious claims of harmful instructional error, to the court system or to society as a whole.

In *Kitchens*, we relied on a number of additional factors in support of an expansive implied waiver rule, among them the remaining availability of habeas review. See *State* v. *Kitchens*, supra, 299 Conn. 496–98. Upon further reflection, I now realize that, to a defendant with a meritorious constitutional claim, habeas review is not an effective and equivalent substitute for direct appellate review. First, because of the delay attendant to filing a habeas petition, receiving a full hearing and awaiting a decision thereon, a party who ultimately prevails in that forum likely will have spent years of his or her life incarcerated for a conviction that was constitutionally infirm. It is no answer that these cases are relatively few. Second, unlike a direct appeal decided pursuant to *Golding*, a habeas appeal presents an inhospitable framework for novel constitutional claims or those that require the overruling of established authority in order to succeed. Compare *In re Yasiel R.*, 317 Conn. 773, 780–81, 120 A.3d 1188 (2015) (party may prevail under third prong of *Golding* even in absence of existing, binding precedent supporting

his or her constitutional claim), with *Ledbetter* v. *Commissioner of Correction*, 275 Conn. 451, 461–62, 880 A.2d 160 (2005) ("numerous state and federal courts have concluded that counsel's failure to advance novel legal theories or arguments does not constitute ineffective performance" and citing cases),[5] cert. denied sub nom. *Ledbetter* v. *Lantz*, 546 U.S. 1187, 126 S. Ct. 1368, 164 L. Ed. 2d 77 (2006).[6]

The unavailability of *Golding* review for a particular category of unpreserved constitutional claims does not just harm individual defendants who might have raised those claims on direct appeal. It also has costs for society as a whole, by decreasing and/or delaying the availability of appellate jurisprudence, primarily concerning the criminal law. In addition to correction of trial error for the benefit of individual defendants, appellate review serves the societal function of articulating, developing and refining the common law. R. Calhoun, "Waiver of the Right to Appeal," 23 Hastings Const. L.Q. 127, 172 (1995). "Historically, courts of appeal have been relied upon to announce, clarify and harmonize the rules of decision employed by the legal system in which they serve. . . . This is a concern that extends far beyond an individual defendant's desire for access to corrective process." (Footnotes omitted; internal quotation marks omitted.) Id. As we have recognized in our jurisprudence governing vacatur, judicial decisions are not merely for the litigants, but are "valuable to the legal community as a whole." (Internal quotation marks omitted.) *State* v. *Boyle*, 287 Conn. 478, 489, 949 A.2d 460 (2008). Notably, when this court or the Appellate Court analyzes a claim under *Golding*, it contributes to the development of the law regardless of whether the claim succeeds and results in relief for the defendant.

Another purpose of appeals is to legitimize state decision making. "In other words, appeals are an essential part of the overall procedural structure which operates to assure us that the system is a fair one. It is essential that the system not only be fair but that it be perceived as fair." R. Calhoun, supra, 23 Hastings Const. L.Q. 178. The right to appeal "assures the public, rightly or wrongly, that trial court decisions will be reviewed for accuracy and fairness and adds an aura of probity to the criminal justice process." Id. In my view, addressing a constitutional issue substantively when the record is adequate to do so, rather than deeming it unreviewable, adds considerably to this endeavor.

Further, I am not convinced that the benefits of the *Kitchens* rule outweigh these costs. In particular, I question whether the intended efficiencies truly will be achieved. Although the rule has reduced the number of direct appeals addressing claims of jury instructional error substantively, it has spawned an entirely new area of jurisprudence addressing whether the requirements

for a waiver have been met.[7] Moreover, when claims are deemed waived under *Kitchens*, they are not necessarily disposed of with finality. Rather, at least some, and perhaps many, merely will be deferred, only to be raised anew in a habeas action.[8] Furthermore, the habeas forum is less efficient than a direct appeal in that a trial must be held, at which counsel must explain his or her reasons for failing to object to the instruction at issue, perhaps with yet another appeal to follow. As the majority acknowledges, "a finding of waiver [in a direct appeal] opens the door to a future habeas proceeding on which the state and the court will be required to expend additional limited resources that could have been devoted to other pending trials." Given these circumstances, I am inclined to conclude that disposing of an unpreserved claim of instructional error at the earliest opportunity, on its merits pursuant to *Golding*, is the most efficient approach.

For the foregoing reasons, I believe that this court should abandon the *Kitchens* experiment of broadly denying direct appellate review of unpreserved constitutional claims of jury instructional error and, instead, return to the much narrower conception of implied waiver in this area that predated *Kitchens*. Under pre-*Kitchens* implied waiver jurisprudence, a waiver was not deemed to have occurred by application of any preconceived general rule, but rather, was determined more flexibly on a case-by-case basis in view of all the relevant facts and circumstances. Claims of instructional error that were not identified at trial were deemed waived by defense counsel's approval of the charge[9] only when, *at the very least*, there was specific, on-the-record discussion of *the particular instruction* later claimed to be defective on appeal, and defense counsel, thereafter, explicitly assented to that instruction.[10] Stated otherwise, the record demonstrated that counsel was focused on the specific instruction later claimed to be erroneous, thought about it, and then indicated to the trial court that he or she had no issue with that instruction.[11] Again, an assessment of waiver is dependent on all of the circumstances surrounding this on-the-record discussion of the instruction at issue, and counsel's agreement thereto, but at a very minimum, a focused discussion and agreement must have occurred.[12] This approach more closely resembles that generally taken in the federal courts,[13] which also permit appellate review of forfeited claims but deny it to waived claims.[14] Although even a narrower implied waiver rule rests on an inference, rather than actual proof, that counsel consciously decided to abandon a known claim, it is a much more reasonable inference[15] and, I believe, one that appropriately accounts for the varying interests of defendants, the state, courts and society at large.[16]

Applying the narrower, pre-*Kitchens* analysis to the facts of this case leads me to conclude that the defen-

dant's instructional claim was not waived and, therefore, should be reviewed pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. The defendant's claim is that the trial court's instruction on identification was improper, because it did not include certain factors that a jury should consider when determining whether a particular identification is reliable. The record indicates that, following the trial court's distribution of written copies of its proposed charges, the court held an in-chambers, off-the-record charging conference with counsel. Thereafter, on the record, the trial court described certain changes to the instructions that it would be making. The trial court mentioned in particular that its proposed charge included an identification instruction that included some factors to be considered, without any elaboration as to those factors, then it stated that it would be adding language to the effect that it was the state's burden to show that the defendant was the person who had committed the crime.[17] There was no on-the-record discussion between the trial court and counsel concerning the identification instruction. After describing one other instruction, the trial court asked counsel whether they had any further exceptions, and both counsel stated that they did not.

Under these circumstances, I would not find a waiver of the defendant's instructional claim. First, there is no copy of the trial court's proposed instructions in the record. Furthermore, although the record suggests that the trial court and counsel discussed the identification instruction in chambers, the extent of that discussion and defense counsel's participation therein is not apparent. Finally, there is no substantive, on-the-record discussion of the instruction to evidence defense counsel's focus thereon. Rather, the trial court's description of the instruction, to which counsel thereafter simply agreed, is quite general. In my view, this is not enough to infer waiver.

Although I believe that the defendant's request for *Golding* review of his claim should not be foreclosed due to waiver, I nevertheless conclude that the claim necessarily fails for another reason. Specifically, because the claim is instructional and not constitutional in nature; see footnote 2 of this concurring opinion; it cannot prevail under the second prong of *Golding*. Accordingly, I would affirm the judgment of the Appellate Court based on different reasoning. See *Small* v. *Commissioner of Correction*, 286 Conn. 707, 709, 946 A.2d 1203 (2008).

For the foregoing reasons, I respectfully concur.

[1] Under *State* v. *Golding*, supra, 213 Conn. 239–40, a criminal defendant can prevail on an unpreserved claim of constitutional error if all of the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Footnote

omitted.) See also *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying third prong of *Golding*).

[2] See, e.g., *State* v. *Cerilli*, 222 Conn. 556, 567, 610 A.2d 1130 (1992) (claim that court should have charged jury on issue of identification is one of instructional, not constitutional error); see also *State* v. *Inglis*, 151 Conn. App. 283, 289, 94 A.3d 1204 ("[c]laims pertaining to the adequacy of a court's instructions on misidentification are not constitutional in nature"), cert. denied, 314 Conn. 920, 100 A.3d 851 (2014).

[3] The difference between a waiver and a forfeiture is that a "forfeiture is the failure to make the timely assertion of a right," whereas a "waiver is the intentional relinquishment or abandonment of a known right." (Internal quotation marks omitted.) *United States* v. *Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); see also *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 70–71, 967 A.2d 41 (2009). Federal courts variously have characterized forfeitures as "more inadvertent" than waivers; *Freytag* v. *Commissioner of Internal Revenue*, 501 U.S. 868, 894 n.2, 111 S. Ct. 2631, 115 L. Ed. 2d 764 (1991) (Scalia, J, dissenting); as "accidental blunder[s]"; *United States* v. *Hamilton*, 499 F.3d 734, 735 (7th Cir. 2007), cert. denied, 552 U.S. 1129, 128 S. Ct. 951, 169 L. Ed. 2d 782 (2008); or as "matter[s] of oversight . . . ." *United States* v. *Yu-Leung*, 51 F.3d 1116, 1122 (2d Cir. 1995).

[4] "When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal." (Internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, 292 Conn. 62, 71, 967 A.2d 41 (2009). On the other hand, as we acknowledged in *State* v. *Kitchens*, supra, 299 Conn. 474, mere forfeiture "is not a bar to appellate review of an unpreserved *Golding* claim but, rather, the precise reason why such review is permissible."

[5] "Under the two-pronged [test of *Strickland* v. *Washington*, 466 U.S. 668, 687–94, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], a defendant can only prevail on an ineffective assistance of counsel claim if he proves that (1) counsel's performance was deficient, and (2) the deficient performance resulted in actual prejudice. . . . To demonstrate deficient performance, a defendant must show that counsel's conduct fell below an objective standard of reasonableness for competent attorneys. . . . To demonstrate actual prejudice, a defendant must show a reasonable probability that the outcome of the proceeding would have been different but for counsel's errors." (Citations omitted.) *Davis* v. *Commissioner of Correction*, 319 Conn. 548, 555, 126 A.3d 538 (2015).

[6] This court has yet to clarify whether a claim that is deemed waived pursuant to *Kitchens* nevertheless is subject to review on direct appeal under the plain error doctrine. See *State* v. *McClain*, 319 Conn. 902, 122 A.3d 637 (2015) (This court granted certification to appeal, limited to the following question: "Did the Appellate Court properly determine that an implied waiver of a claim of instructional error that satisfies *State* v. *Kitchens*, [supra, 299 Conn. 447], also forecloses plain error review?"). Even in the event that we ultimately hold that such review remains available, however, it seems clear that, under the stringent standard governing claims of plain error, defendants raising such claims would be less likely to prevail under that framework than they would have been under the *Golding* standard. See *State* v. *Myers*, 290 Conn. 278, 289, 963 A.2d 11 (2009) (explaining that plain error doctrine "is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party . . . [and] is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings" [internal quotation marks omitted]). Moreover, novel claims or those requiring the overruling of existing jurisprudence also are unlikely to succeed under this rule, because "[i]t is axiomatic that the trial court's proper application of the law existing at the time of trial cannot constitute reversible error under the plain error doctrine." (Internal quotation marks omitted.) *State* v. *Darryl W.*, 303 Conn. 353, 374, 33 A.3d 239 (2012).

[7] A search of Connecticut appellate jurisprudence postdating *Kitchens*, encompassing a period of approximately five years, returns more than forty cases applying its holding, with varying results.

[8] For this reason, applying *Kitchens* is akin to playing a game of slow-motion, jurisprudential "whack-a-mole." The reviewing court considering the defendant's direct appeal may slap down an unpreserved instructional

claim as waived, and therefore unreviewable, today, only to have the claim pop up anew in a habeas court elsewhere in the state in the future.

[9] As this court discussed in *State* v. *Kitchens*, supra, 299 Conn. 477–80, some cases have held claims of instructional error to have been waived impliedly by conduct, even in the absence of an overt agreement to the instruction at issue.

[10] See *State* v. *Hampton*, 293 Conn. 435, 449–50, 978 A.2d 1089 (2009) (defendant waived claim pertaining to unanimity aspect of sexual assault charge when trial court twice highlighted unanimity issue in charge conferences and defense counsel thereafter expressed approval of charge); *State* v. *Brewer*, 283 Conn. 352, 357 n.7, 361, 927 A.2d 825 (2007) (defendant waived claim pertaining to unanimous acquittal aspect of lesser included offense instruction by expressly approving lesser included offense instruction after discussion regarding its necessity); *State* v. *Fabricatore*, 281 Conn. 469, 475, 481, 915 A.2d 872 (2007) (defendant waived claim pertaining to duty to retreat aspect of self-defense instruction by, inter alia, expressing satisfaction with self-defense instruction after discussion about it); *State* v. *Hankerson*, 118 Conn. App. 380, 386–87, 389, 983 A.2d 898 (2009) (defendant waived claim pertaining to causation aspect of felony murder instruction by expressly approving felony murder instruction after discussion of it), cert. denied, 298 Conn. 932, 10 A.3d 518 (2010); *State* v. *Collazo*, 115 Conn. App. 752, 760, 974 A.2d 729 (2009) (defendant waived objection to instructing jury that he could be convicted as either principal or accessory when that approach was discussed and counsel agreed to it), cert. denied, 294 Conn. 929, 986 A.2d 1057 (2010); *State* v. *Velez*, 113 Conn. App. 347, 360–61, 966 A.2d 743 (defendant waived claim pertaining to supplemental intent instruction by discussing instruction with court then agreeing twice to that instruction), cert. denied, 291 Conn. 917, 970 A.2d 729 (2009); *State* v. *Khuth*, 111 Conn. App. 184, 192–93, 958 A.2d 218 (defendant waived claim pertaining to definition of "aided," when he specifically agreed with definition given by court and objected to any alteration of it in response to jury query), cert. denied, 289 Conn. 957, 961 A.2d 423 (2008); *State* v. *Diaz*, 109 Conn. App. 519, 536–37, 952 A.2d 124 (defendant waived claim pertaining to instruction addressing missing evidence when, following extended colloquy between court and counsel, he affirmatively expressed consent to that instruction), cert. denied, 289 Conn. 930, 958 A.2d 161 (2008); compare *State* v. *Rodriguez-Roman*, 297 Conn. 66, 86–87, 3 A.3d 783 (2010) (defendant did not waive claim pertaining to racketeering instruction when, following brief discussion, counsel expressed satisfaction with conspiracy instruction); *State* v. *Reynolds*, 118 Conn. App. 278, 307, 983 A.2d 874 (2009) (defendant did not waive claim pertaining to consent instruction by assenting generally, or specifically to other parts of charge), cert. denied, 294 Conn. 933, 987 A.2d 1029 (2010).

In light of the weight of this authority, I am not persuaded by the majority's contention that, "[e]ven before our decision in *Kitchens*, Connecticut law provided that approval of the jury instructions by trial counsel acts as a waiver of *all* potential jury instruction claims and not merely claims arising from jury instructions that defense counsel specifically discussed on the record at trial." (Emphasis in original.) Specifically, neither of the two cases cited as authority for that proposition appear to support it, because in each case, the particular instruction at issue on appeal *was* discussed and accepted by trial counsel on the record. See *State* v. *Holness*, 289 Conn. 535, 541–44, 958 A.2d 754 (2008) (defendant waived claim that he was cross-examined in violation of his right to confrontation, using information from statement of unavailable witness, by counsel's requesting, then agreeing to, cautionary instruction as remedy); see also *State* v. *Brewer*, supra, 283 Conn. 357 n.7 (defendant waived claim pertaining to unanimous acquittal aspect of lesser included offense instruction by expressly approving instruction after discussion regarding its necessity).

[11] The nature and degree of focus may have varied, but, at a minimum, there was an actual substantive discussion of the instruction at issue that indicates that counsel truly was thinking about that instruction. In contrast, a rote call and response exercise, pursuant to which a trial court reads through a proposed jury charge on the record, pausing after each instruction to secure counsel's agreement therewith, would not result in an implied waiver of claims of error as to each approved instruction, absent additional, meaningful discussion of the contents of an instruction.

[12] This is not to say that, in all cases in which a focused discussion occurs, an implied waiver inevitably will be found. For example, the specific instruction at issue may be lengthy or complex, counsel may not have had much time to review it, and the on-the-record discussion may have been limited to an isolated aspect of the instruction. Under the totality of those circum-

stances, inferring waiver of a claim pertaining to an entirely different portion of the instruction would not be reasonable.

[13] See, e.g., *United States* v. *Polouizzi*, 564 F.3d 142, 148, 153 (2d Cir. 2009) (defendant waived claim of error pertaining to definition of "wrongfulness" when he agreed to definition proposed by court); *United States* v. *Sanders*, 520 F.3d 699, 702 (7th Cir. 2008) (defendant waived claim pertaining to adequacy of supplemental instruction by explicitly approving that instruction); compare *United States* v. *Hamilton*, 499 F.2d 734, 736 (7th Cir. 2007) (defendant did not waive claim pertaining to intent instruction where judge did not query defense counsel specifically about that instruction or ask whether he agreed to it), cert. denied, 552 U.S. 1129, 128 S. Ct. 951, 169 L. Ed. 2d 782 (2008).

[14] In the federal courts, unpreserved claims of trial error that have not been waived are reviewable pursuant to rule 52 (b) of the Federal Rules of Criminal Procedure, which provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the [District] [C]ourt's attention." The United States Supreme Court has articulated a four-pronged rule to determine whether rule 52 (b) review will be afforded: "First, there must be an error or defect—some sort of [d]eviation from a legal rule—*that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant*. . . . Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. . . . Third, the error must have affected the appellant's substantial rights . . . . Fourth . . . if the above three prongs are satisfied, the court of appeals has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." (Citations omitted; emphasis altered; internal quotation marks omitted.) *Puckett* v. *United States*, 556 U.S. 129, 135, 129 S. Ct. 1423, 173 L. Ed. 2d 266 (2009). As the foregoing test indicates, federal plain error review differs from Connecticut's highly restrictive plain error doctrine; see footnote 6 of this concurring opinion; and is more closely analogous to this state's *Golding* review.

I disagree with the majority that it is appropriate to have fewer jury instructional claims reviewable under our state waiver rule than under federal waiver doctrine, because relief for a proven violation is more automatic under *Golding* than under federal plain error review, which provides for discretionary relief. It is axiomatic that *Golding* review is limited to claims of constitutional magnitude, whereas federal plain error review is available for nonconstitutional claims as well. Accordingly, it stands to reason that more automatic relief should follow under *Golding*, because it necessarily will apply to a smaller universe of more egregious claims.

[15] Our case law permits juries to draw reasonable and logical inferences from the evidence presented at trial, and disallows them from engaging in speculation and conjecture. *State* v. *Morrill*, 193 Conn. 602, 608, 478 A.2d 994 (1984). I believe that appellate courts should operate within the same parameters. It does not reasonably and logically follow from defense counsel's global review of a set of jury instructions, and general consent thereto, that he or she was aware of all potential flaws in the instructions and decided to disregard them. Conversely, when defense counsel's attention is drawn to a specific instruction, and he or she thereafter expresses satisfaction with that instruction, an inference that counsel agreed to the instruction, despite knowledge of some irregularity in it, is a much more reasonable inference.

Relatedly, I disagree with the majority that implying a broad waiver of claims of instructional error, both known and unknown, pursuant to *Kitchens* is analogous to a defendant's abandonment of various claims in connection with his or her waiver of other constitutional rights, specifically, the rights to a trial, counsel or a probable cause hearing. In each of the latter three instances, a criminal defendant overtly and consciously chooses to relinquish claims, known or unknown, in exchange for something he or she values—a favorable plea, the right to self-representation or a strategic advantage, respectively. This is unquestionably true, notwithstanding the majority's assessment of the benefit received, in the case of a waiver of counsel, as negligible, or its focus on what a defendant subject to a *Kitchens* waiver retains rather than on that which he or she has forfeited. In contrast, with an *implied* waiver pursuant to *Kitchens*, the defendant is *presumed*, by operation of law, to have abandoned a valuable right to appeal, not in exchange for something, but by merely agreeing to the proposed jury instructions. In my view, when a waiver is to be implied from circumstances and is not the result of any conscious quid pro quo, the scope of that waiver should be restrictive rather than broad.

[16] Conceivably, in a particular case, counsel may agree with a specific jury instruction, after discussion of that instruction with the trial court, yet still be unaware of a defect therein. In such an instance, a claim relating to that defect, although deemed waived on appeal, in actuality was only forfeited. Even under those circumstances, however, I do not believe that it is fundamentally unfair to deny direct appellate review of the claim pursu-

ant to *Golding*, particularly in light of the competing consideration of avoiding an ambuscade of the trial court and opposing counsel. As we explained in *Kitchens*, there are features unique to jury instructions that justify holding counsel to a higher standard of accountability for failing to preserve claims of error. See *State* v. *Kitchens*, supra, 299 Conn. 482–85. Specifically, jury instructions are carefully formulated outside of the rush of trial pursuant to the rules of practice that afford counsel a large degree of participation in a structured process. The purpose of these rules is to detect error at the earliest possible juncture, and the threat of an implied waiver of an instructional claim on appeal, at least in narrowly defined circumstances, provides an appropriate incentive for the opportunity to be taken seriously. See id., 495–96.

The detection of error at trial, without the necessity of an appeal, is the most desirable outcome for purposes of both fairness to defendants and the efficient operation of the court system. "Waiver is based on the principle that [c]ontemporaneous objection gives the trial court the opportunity to correct its own errors and thereby avoids unnecessary delays through appeals, reversals, and new trials." (Internal quotation marks omitted.) *In re Eternity E.*, Docket Nos. 01-2009, 01-2010 WL 131822, *3 (Wis. App. October 25, 2001) (decision without published opinion, 248 Wis. 2d 985, 638 N.W.2d 395 [2001]), review denied, 250 Wis. 2d 559, 643 N.W.2d 96 (2002). "Moreover, [a] waiver rule encourages attorneys to diligently prepare their cases for trial . . . and discourages the strategy of building in errors to ensure a new trial in the event of a guilty verdict." (Citation omitted.) *State* v. *Lucas*, Docket No. 92-0477-CR, 1993 WL 322517, *6 (Wis. App. August 26, 1993) (decision without published opinion, 178 Wis. 2d 875, 506 N.W.2d 426 [1993]). In short, requiring claims of error first to have been presented to a trial court "reflects a policy of encouraging the efficient use of judicial resources." *Ericson* v. *King*, Docket No. 60327-2-I, *2 (Wn. App. August 4, 2008) (decision without published opinion, 146 Wn. App. 1023 [2008]).

[17] The trial court stated: "With respect to identification, I did give an identification section in the charge which outlines on page 14 what the jury must be satisfied in making the identification including some of the factors they can consider in this evidence. However, I'm going to expand that language to include the language to the effect that in every criminal prosecution, it is the state's responsibility to show that the defendant is the person who committed the offense and if they are not satisfied of that evidence then they cannot find the defendant guilty of any particular offense. I'm going to highlight that because obviously that is an issue in this case."